IN RE the COMMITMENT OF William E. MARBERRY:

STATE of Wisconsin, Petitioner-Respondent,

v.

William E. MARBERRY, Respondent-Appellant.†

Court of Appeals

*No. 98–2883. Submitted on briefs September 10, 1999.—Decided November 24, 1999.*

(Also reported in 605 N.W.2d 612.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Donald T. Lang,* assistant state public defender of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Marguerite M. Moeller,* assistant attorney general, and *James E. Doyle,* attorney general.

Before Dykman, P.J., Eich and Deininger, JJ.

¶ 1. DEININGER, J. William Marberry appeals an order committing him to the Department of Health and Family Services (DHFS) for institutional care under ch. 980, STATS. Marberry claims that the order must be vacated because the DHFS failed to conduct an examination of his mental condition within six months after his "initial commitment," which he asserts occurred in November 1996. We conclude that the six-month period for re-examination under § 980.07(1), STATS., does not begin to run until the court has conducted a dispositional hearing and issued an "initial commitment order" under § 980.06(2), STATS.[1] The court did not enter the relevant order until July 1998, and nothing in the record indicates that the DHFS did not re-examine him within six months thereafter. Accordingly, we reject Marberry's first claim of error.

¶ 2. Marberry also claims that the term "substantially probable" is unconstitutionally vague, and that not defining "substantially probable" as "extremely likely" violates his right to equal protection of the laws as guaranteed by the Fourteenth Amendment to the U.S. Constitution. These arguments were recently rejected by the supreme court in *State v. Curiel*, 227 Wis. 2d 389, 597 N.W.2d 697 (1999). Finally, Marberry claims that the trial court erred by applying the wrong standard in determining that it is substantially probable that he will reoffend. We conclude that the record supports a finding that Marberry was much more likely than not to reoffend, and thus the trial court did not err in finding that it was substantially probable that Marberry would reoffend. Accordingly, we affirm the appealed order.

---

[1] All statutory references in this opinion are to the Wisconsin Statutes, 1997–98, unless otherwise indicated.

## BACKGROUND

¶ 3. Marberry was convicted in 1987 of three counts of second-degree sexual assault and was sentenced to a prison term of ten years. Prior to his scheduled release in 1995, the State filed a petition alleging that Marberry was a sexually violent person eligible for commitment under ch. 980, STATS. The trial court found there was probable cause to believe that Marberry was a sexually violent person and ordered a trial pursuant to § 980.05, STATS.[2]

¶ 4. In order to find a person to be "a sexually violent person," the fact finder must be convinced beyond a reasonable doubt that the person " '(1) was convicted, found delinquent, or found not guilty by reason of mental disease or defect of a sexually violent offense; (2) is within 90 days of release from a sentence, commitment, or secured correctional facility arising from a sexually violent offense; (3) has a mental disorder; and (4) is dangerous because that mental disorder creates a substantial probability that he or she will engage in acts of sexual violence.' " *State v. Curiel*, 227 Wis. 2d at 396 n.4, 597 N.W.2d at 700 (citation omitted); *see also* § 980.02(2), STATS.

---

[2] Section 980.05(1), STATS., provides that a trial must be held "no later than 45 days after the date of [a] probable cause hearing. . . ." The trial court conducted a probable cause hearing in June 1995. A month later, however, the court held that ch. 980, STATS., was unconstitutional and dismissed the State's commitment petition. The State appealed the dismissal, and this court stayed the appeal pending the supreme court's review of the constitutionality of ch. 980. After the supreme court upheld the constitutionality of ch. 980 in *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), and *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995), we reversed the trial court's dismissal order and remanded the case for trial.

¶ 5. At the court trial in October 1996, Marberry disputed the fourth element, whether it was substantially probable that he would engage in future acts of sexual violence. Each party called an expert to testify on this issue. The State's expert, Dr. Dennis Doren, testified that, in his opinion, Marberry suffers from an antisocial personality disorder that makes it substantially probable that he will engage in future acts of sexual violence. Because "substantially probable" was not defined in the statute, Doren interpreted this term to mean "much more likely than not."

¶ 6. In formulating his opinion, Doren considered a list of thirty-one "risk factors" that are considered to be predictive of future sexually violent acts. Doren determined that twenty-five of these risk factors were present in Marberry's case. In particular, Doren concluded that Marberry (1) exhibits a high degree of psychopathy; (2) had been the victim of sexual abuse as a child; (3) had exhibited juvenile antisocial behavior; (4) had a history of substance abuse; (5) had been diagnosed with a personality disorder; (6) had never been married; and (7) chose a victim outside of his family. Because a large number of risk factors apply to Marberry, Doren concluded that "a substantial risk for reoffense exists." Doren also relied on the "Warkworth sexual behavior clinic scale." This scale uses four factors to determine a patient's probability to reoffend: (1) the patient's history of sexual offenses; (2) his or her criminal "personality"; (3) the results of a deviant sexual arousal test; and (4) the patient's social competence. After examining Marberry, Doren awarded a "low," "moderate" or "high" ranking to each of these factors. Based on these rankings, Doren concluded that Marberry "falls in the 59th to 84th percentile group for risk" of reoffense.

¶ 7. Marberry called Dr. Charles Lodl to counter Doren's testimony. Lodl testified that in his opinion Marberry does not suffer from a mental disorder that substantially predisposes him to engage in acts of sexual violence. When asked to define "substantially probable," Lodl said that he applies this term to patients who demonstrate a seventy percent risk of reoffense. In concluding that Marberry is not substantially predisposed to reoffend, Lodl relied on several factors. Most significantly, Lodl concluded that Marberry does not exhibit a high degree of psychopathy. In addition, Lodl disagreed with Doren's conclusion that Marberry suffered from an antisocial personality disorder. Finally, Lodl determined that Marberry's risk of recidivism has been reduced "to at least some degree" by various treatment programs.

¶ 8. After reviewing the testimony of these two witnesses and the evidence presented at trial, the trial court concluded that the State had met its burden to prove beyond a reasonable doubt that Marberry suffers from a mental disorder that makes it substantially probable that he will engage in future acts of sexual violence. Consequently, the court found Marberry to be a sexually violent person and ordered him committed to the custody of the DHFS. The court entered a document entitled "Findings of Fact, Judgment, Initial Commitment Order, and Order for Predisposition Investigation." In it, the court instructed the department to conduct a predisposition investigation under § 980.06(2)(a), STATS., "to assist the court in framing the final Commitment Order." The dispositional hearing in this case was delayed due to the illness of the trial judge, and the case was eventually assigned to Judge Moeser. Judge Moeser conducted the dispositional hearing in March and June 1998, and in July

1998, he ordered Marberry committed to the department "for institutional care in a secure mental health unit or facility." Marberry appeals the order.

## ANALYSIS

¶ 9.   Chapter 980 sets forth procedures by which persons convicted of certain "sexually violent offenses" can be classified as "sexually violent persons" and committed for treatment after they have served their criminal sentences. The State, as petitioner, bears the burden of proving that the person has a mental disorder which creates a substantial probability that he or she will engage in future acts of sexual violence. *See* § 980.02(2)(b) and (c), STATS.; § 980.05(3), STATS. If the court or a jury determines that a person is a "sexually violent person," the court must order the person committed to the custody of the DHFS for care and treatment. *See* § 980.06(1), STATS. The court's "initial commitment order" must specify whether the committed person will undergo institutional care or be under supervised release. *See* § 980.06(2).

¶ 10.   Within six months after an "initial commitment under s. 980.06," and every twelve months thereafter, the DHFS must conduct re-examinations of the committed person's mental condition to determine whether he or she should be discharged or transferred to a less restrictive treatment setting. *See* § 980.07, STATS. Marberry claims that his "initial commitment" occurred in November 1996 when the trial court entered its "Findings of Fact, Judgment, Initial Commitment Order, and Order for Predisposition Investigation," which, among other things, ordered Marberry "committed to the custody of the D[HFS] until such time as he is no longer a sexually violent person." It is undisputed that the DHFS did not con-

duct a re-examination of Marberry within six months of the November 1996 order. Thus, Marberry argues his commitment must be vacated because the time limit of § 980.07 is mandatory, and a violation renders the trial court incompetent to proceed. We disagree with Marberry's contentions.

¶ 11. The interpretation and application of statutes to undisputed facts are questions of law which we review de novo. *See School Bd. v. Bomber*, 214 Wis. 2d 397, 402, 571 N.W.2d 189, 192 (Ct. App. 1997). When we construe a statute, our primary purpose is to ascertain the intent of the legislature. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559 N.W.2d 563, 566 (1997). In our effort to discern the legislature's intent, we first look to the language of the statute. *See Jungbluth v. Hometown, Inc.*, 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). If its meaning and application are plain, we look no further. *See id.* We conclude that the plain language of §§ 980.06 and .07, STATS., establishes that the six-month period for the first re-examination does not begin to run until the trial court conducts a dispositional hearing and issues an "initial commitment order" under § 980.06(2), STATS.

¶ 12. We note first that § 980.06(2)(a), STATS., requires the trial court to "enter an initial commitment order under this section *pursuant to a hearing held as soon as practicable after the judgment* that the person . . . is a sexually violent person is entered" (emphasis added). Furthermore, the "order for commitment under this section [980.06]" must specify whether the committed individual is to be institutionalized or placed on supervised release. *See* § 980.06(2)(b). The language of these two paragraphs plainly establishes that there can be no "initial commitment order under" § 980.06

until the court has conducted a hearing, and until it has determined whether the person should be institutionalized or subject to supervised release. The order of November 19, 1996, met neither of these requirements: it was not entered pursuant to a dispositional hearing under § 980.06(2), and it did not specify whether Marberry was to receive institutional care or be under supervised release. These requirements were not met until the completion of the June 1998 hearing and the entry of the "Disposition Order" thereafter.

¶ 13.   Further support for our conclusion is found in § 980.05, STATS. Subsection (5) provides that after a court or jury finds that a person is a "sexually violent person," the court must "enter a judgment on that finding and . . . *commit the person as provided under s. 980.06.*" Section 980.05(5) (emphasis added). The next subsection explains that the post-trial judgment is "interlocutory to a commitment order under s. 980.06." Section 980.05(6). And, if the court "lacks sufficient information" to make the institutional care versus supervised release determination "immediately after trial," the court "may adjourn the hearing" and order a "predisposition investigation." *See* § 980.06(2)(a), STATS. Applying these subsections to the present facts, it is clear that the November 1996 order, notwithstanding its title and some of its language, was not the initial commitment order contemplated by §§ 980.06(2) and .07, STATS. Rather, the November 1996 document constituted (1) the judgment that Marberry was a sexually violent person under § 980.05(5), STATS.; (2) an order for the adjournment of the dispositional hearing under § 980.06(2)(a), STATS; and (3) an order to the DHFS to conduct the predisposition investigation described in that paragraph.

589

¶ 14.   We conclude therefore that "an initial commitment" of Marberry did not occur until after the requirements of § 980.06, STATS., were met upon completion of the dispositional hearing on June 8, 1998. Marberry appeals the commitment order of July 15, 1998, and nothing in the record indicates that the DHFS did not re-examine him within six months after his initial commitment. Accordingly, we reject Marberry's first claim of error.

¶ 15.   Marberry makes one additional argument regarding the timing of re-examinations for persons committed under ch. 980, STATS. He asserts that there is no time limit set forth in § 980.06(2)(a), for completing the predisposition investigation and conducting the hearing, and thus, persons found to be sexually violent persons "will be compelled to wait additional months, indeed a year, to secure the reexamination required by the legislature." We do not agree that the statute permits the State to keep a person indefinitely in the limbo between judgment and commitment under ch. 980.

¶ 16.   Although it is true that the statute sets no specific time period for the completion of a predisposition investigation and the resumption of an adjourned hearing, it does provide that the dispositional hearing should be "held as soon as practicable after the judgment." *See* § 980.06(2)(a), STATS. A person in Marberry's position, having been adjudged to be a sexually violent person but not yet having been committed under § 980.06, is not powerless to ensure that a dispositional hearing is conducted "as soon as practicable" after the entry of judgment. He or she may file a motion or request in the trial court, or in an extraordinary case, may petition this court for a supervisory writ. There is no indication in the record that Marberry

made any motion or request to expedite the investigation or to schedule the dispositional hearing.[3]

¶ 17.   In addition to his claim regarding the timing of his re-examination, Marberry raises two constitutional issues addressing the definition of the term "substantially probable" in ch. 980, STATS. He first contends that the term "substantially probable" is unconstitutionally vague unless it is explicitly defined, and next, that defining "substantially probable" as anything other than "extremely likely" violates his right to equal protection because the term is defined differently under ch. 51, STATS. The supreme court has resolved both of these issues in *State v. Curiel*, 227 Wis. 2d 389, 597 N.W.2d 697 (1999). The court concluded in

---

[3] It appears that the lengthy delay in this case between the judgment and the commitment order stemmed largely from the unavailability of the original trial judge for medical reasons. The record discloses the following sequence of events following the entry of judgment on November 19, 1996: Marberry filed "Motions after Decision," which were denied after a hearing on January 3, 1997. Transcripts of the trial and motion hearing were prepared for "appeal purposes." Marberry requested on April 1, 1997, that another judge enter a written order denying the motions so that an appeal could be initiated, and Judge Moeser entered the order on April 3. (The record does not indicate whether Marberry petitioned for an interlocutory appeal of that order.) In May, the case was "randomly reassigned" during Judge Torphy's unavailability to Judge DeChambeau, but he recused himself because he had prosecuted Marberry. Judge Moeser was then assigned and he conducted a scheduling conference on June 30, 1997, and set the case for dispositional hearing on October 20, 1997. On a "jt. request for setover," the court rescheduled the hearing for March 12, 1998. The dispositional hearing was not completed that day, and was continued until June 8, 1998. The court entered the "Disposition Order" on July 15, 1998.

*Curiel* that "substantially probable" means "much more likely than not," and that the term is not unconstitutionally vague. *See id.* at 414–15, 597 N.W.2d at 708–09. The court also concluded that the definition does not violate equal protection because persons committed under ch. 980, STATS., are not treated differently than persons committed under ch. 51, STATS. *See id.* at 413–14, 597 N.W.2d at 708.

¶ 18.  As his final claim of error, Marberry contends that the trial court did not apply the proper standard in determining that it is substantially probable that he will engage in future acts of sexual violence. He clarifies in his reply brief that the issue he wishes to raise is *not* the sufficiency of the evidence, but his "right to have the finder of fact weigh the evidence and assess the credibility of the competing witnesses under the governing legal standard." He likens this claim of error to one challenging a jury instruction which incorrectly states the elements of an offense. We reject this final claim because (1) the record does not establish that the trial court applied an incorrect standard; (2) there is sufficient evidence in the record to establish that it is "much more likely than not" that Marberry will reoffend; and (3) Marberry thus suffered no prejudice, even though the trial court did not explicitly adopt this definition in reaching its findings and conclusions.

¶ 19.  The trial court determined in its written decision that the State had met its burden to show, beyond a reasonable doubt, that Marberry's mental disorder "creates a substantial probability that he will engage in acts of sexual violence." We agree with Marberry that the court did not, in the remainder of its decision, clearly adopt a specific definition of the term

"substantially probable." But the court was not required to do so. *See* § 805.17(2), STATS. (providing that after a court trial, a memorandum decision is sufficient "if the findings of ultimate fact and conclusions of law appear therein").

¶ 20. In stating its ultimate conclusion as to the likelihood that Marberry would reoffend, the court applied the correct standard—"substantially probable." The court thus made a sufficient finding or conclusion to support its judgment, and no additional discussion by the trial court was necessary. The supreme court has since clarified that "substantially probable" means "much more likely than not." *See Curiel*, 227 Wis. 2d at 414, 597 N.W.2d at 708. The question we must address, therefore, is whether the present record supports a finding that it is much more likely than not, and thus, substantially probable, that Marberry will reoffend. We conclude that it does.

¶ 21. A reviewing court must apply the criminal standard of review when determining whether the evidence is sufficient to prove that a person is a sexually violent person under ch. 980, STATS. *See State v. Kienitz*, 227 Wis. 2d 423, 434, 597 N.W.2d 712, 717 (1999). Thus, we will not reverse a commitment:

> "unless the evidence, viewed most favorably to the state and the [commitment], is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found [the defendant to be a sexually violent person] beyond a reasonable doubt."

*Id.* (citations omitted). We conclude that the evidence is sufficient to support the trial court's finding that it is substantially probable that Marberry will engage in future acts of sexual violence, because the court could

have reasonably found on this record that it is "much more likely than not" that Marberry will reoffend.

¶ 22. The trial court based its determination, in part, on the expert testimony of Dennis Doren. Doren explicitly defined "substantially probable" as "much more likely than not" and testified that in his expert opinion it is substantially probable that Marberry will engage in future acts of sexual violence. The trial court also relied on the fact that Marberry exhibited sexually violent behavior after sentencing and while on parole, and that his involvement and success in therapy was "ambiguous at best." A trial court is entitled to rely on behavioral history as well as expert testimony in determining whether it is substantially probable that a person will reoffend. *See Kienitz*, 227 Wis. 2d at 436, 597 N.W.2d at 718.

¶ 23. Thus, after reviewing the record, we conclude that the evidence was not "so lacking in probative value that no trier of fact, acting reasonably, could have . . . [found] beyond a reasonable doubt" that Marberry is a sexually violent person. *See id.* at 437, 597 N.W.2d at 718. We therefore reject Marberry's final challenge. Regardless of whether the trial court had in mind the precise definition of "substantially probable" set forth in *Curiel*, the record supports the court's finding under the correct definition. Marberry thus suffered no prejudice, and we will not set aside a judgment that is properly supported by sufficient evidence in the record. *See* § 805.18(2), STATS. (directing that "[n]o judgment shall be reversed or set aside . . . unless in the opinion of the court to which the application is made . . . it shall appear that the error complained of has affected the substantial rights of the party seeking to reverse . . . the judgment").

## CONCLUSION

¶ 24.   For the reasons discussed above, we affirm the appealed order.

*By the Court.*—Order affirmed.