In re the Commitment of Thomas Treadway:
State of Wisconsin, Petitioner-Respondent,

v.

Thomas Treadway, Respondent-Appellant.†

Court of Appeals

*No. 00–2957. Submitted on briefs June 5, 2002.—Decided
July 30, 2002.*

## 2002 WI App 195

(Also reported in 651 N.W.2d 334.)

† Petition to review denied 10-21-02.

On behalf of the respondent-appellant, the cause was submitted on the brief of *Lynn Ellen Hackbarth* of *Law Offices of Lynn Hackbarth,* of Milwaukee.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general, and *Christian R. Larsen,* assistant attorney general.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. SCHUDSON, J. Thomas Treadway appeals from the trial court order denying his postverdict motions "to have his commitment as a sexually violent person reversed or vacated, and to have the [petition alleging that he is a sexually violent person] dismissed

for want of jurisdiction," or, alternatively, to be granted a new trial "upon his additional claims of error." Contending that his commitment is unlawful, he argues that: (1) the State did not timely file the petition; (2) the trial court allowed him fewer peremptory strikes than he should have received, given that commitment could, in effect, be comparable to a sentence of life imprisonment; (3) the trial court improperly failed to strike a juror for cause, thus forcing him to use one of his peremptory strikes; (4) the trial court erred in allowing his probation officer to offer an opinion that he was a "high risk" to reoffend; and (5) the evidence was insufficient to prove that he was a sexually violent person.

¶ 2. Alternatively, Treadway argues that trial counsel was ineffective for failing to raise some of these arguments. Additionally, the parties address the nature of this court's jurisdiction over Treadway's appeal, given Treadway's failure to file postverdict motions within twenty days of the jury's verdict.

¶ 3. We conclude that, in WIS. STAT. ch. 980 proceedings, postverdict motions must be filed within twenty days of the commitment order and, therefore, Treadway, by filing his motions within twenty days of the commitment order, preserved his appeal as a matter of right.[1] We also conclude, however, that Treadway's other arguments fail. Accordingly, we affirm.

---

[1] We acknowledge that this conclusion counters our June 6, 2001 order in which we concluded that this court lacked jurisdiction to review the November 16, 1999 commitment order. In our June 6 order, we explained:

> Although that [November 16, 1999 commitment] order was final and appealable as of right pursuant to WIS. STAT. § 808.03, Treadway failed to file a notice of appeal of the order within the time limits prescribed in WIS. STAT. § 808.04(1). The court may not extend that deadline, and failure to file a timely notice of appeal

## I. BACKGROUND

¶ 4. On August 31, 1999, a jury found Treadway to be a sexually violent person. *See* Wis. Stat. § 980.05(5) (1997–98). Following a dispositional hearing, the trial court, on November 16, 1999, entered a judgment finding Treadway to be a sexually violent person, and an order committing him to the custody of

deprives the court of jurisdiction. Wis. Stat. Rules 809.82(2)(b) and 809.10(1)(b). *See also State v. Brunette*, 212 Wis. 2d 139, 142, 567 N.W.2d 647 (Ct. App. 1997).

With respect to the July 26, 2000 order [denying Treadway's postverdict motions], we conclude that we have jurisdiction, although the scope of our review may be limited. This court has jurisdiction over final, appealable orders from which a timely notice of appeal is taken. *See Hartford Insurance Co. v. Wales*, 138 Wis. 2d 508, 516, 406 N.W.2d 426 (1987) . . . . Treadway filed his notice of appeal within 90 days of the issuance of the July 26, 2000 order, making it timely with respect to that order. *See* Wis. Stat. § 808.04(1).

While we appear to have jurisdiction over the appeal, however, the scope of our review may be limited in the following ways. First, because Treadway did not file his postverdict motions within twenty days of the verdict, as Wis. Stat. § 805.16 requires, the circuit court may have lacked competency to decide the motions. A circuit court's lack of competency over an issue results in waiver of the right to assert that issue on appeal. *Hartford Insurance Co.*, 138 Wis. 2d at 514. Second, this court is precluded from reviewing those issues that could have been raised in an appeal from the November 16, 1999 commitment order. That is because, under Wis. Stat. Rule 809.10(4), an appeal brings before the court only those "*nonfinal* judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon" (emphasis added). The commitment order was final and appealable and any issues it resolved are not within the scope of this appeal.

(Footnote omitted.) As we will explain, while these legal principles remain sound, they are, to a very limited extent, qualified in the context of an appeal from a Wis. Stat. ch. 980 commitment order.

the Wisconsin Department of Health and Family Services (the Department) for institutional care in a secure mental health unit or facility. *See* WIS. STAT. § 980.065 (1999–2000).

¶ 5. On December 1, 1999, Treadway's trial counsel filed "Motions After Judgment and Order for Commitment (Post Verdict Motions)," essentially presenting the arguments offered in this appeal. Following consideration of two sets of briefs by the parties, the trial court, in a written decision filed July 26, 2000, denied Treadway's motions.

## II. DISCUSSION

### A. Timeliness of Appeal

¶ 6. Treadway filed his "Motions After Judgment and Order for Commitment (Post Verdict Motions)" fifteen days after entry of *the order* committing him to the custody of the Department, but three months after *the verdict*. The trial court, after reviewing the briefs it had requested regarding the timeliness of the motion, concluded, however, that "[d]ue to the hybrid nature of sexual predator cases, the jury's verdict does not represent the *final* disposition of the case as in civil trials." The court, therefore, went on to order additional briefs and, ultimately, to address the merits of Treadway's claims.

¶ 7. The State maintains that because WIS. STAT. ch. 980 proceedings are governed by the rules of civil procedure, and because Treadway failed to file his postverdict motions within twenty days of the verdict, as required in civil proceedings, he has waived his appeal as a matter of right. The State concedes, how-

ever, that this court nevertheless has discretion to retain jurisdiction and address Treadway's arguments. *See Hartford Ins. Co. v. Wales*, 138 Wis. 2d 508, 516–18, 406 N.W.2d 426 (1987).[2] Treadway responds that because ch. 980 trials, like criminal trials, necessarily anticipate a separate dispositional phase, the timeliness of his motions should be pegged to the date of disposition.

¶ 8. The State acknowledges "the arguable logic in the circuit court's approach—that postverdict motions should await the final disposition of a chapter 980 case." The State maintains, however, that in the absence of any "express provision on the timing of postverdict (or

---

[2] The supreme court explained:

[Wis. Stat. § 809.10] provides that, when a notice of appeal is timely filed, the court of appeals has jurisdiction over the appeal . . . .

. . . .

[Wis. Stat. § 752.35] allows the court of appeals to exercise its discretion to consider, as a part of plaintiffs' appeal, the issues raised by plaintiffs in their untimely motion in the circuit court, notwithstanding that the trial court was not given an opportunity to consider those issues before ordering judgment on the verdict. Under sec. 752.35, the court of appeals had jurisdiction to hear the appeal whether or not the motions on the particular issues were timely made. But the right on appeal is the right of the appeals court to exercise discretion. It is not a matter to be asserted as of right by the appellant.

. . . .

Numerous Wisconsin cases have held that a party's failure to properly or timely raise issues in the trial court by postverdict motions results only in a waiver of the opportunity for an appeal *as of right* on those issues. The reviewing court does not lose jurisdiction to consider such issues but may consider them in its discretion.

*Hartford Ins. Co.*, 138 Wis. 2d at 516–18.

postdisposition) motions" in WIS. STAT. ch. 980, WIS. STAT. § 805.16(1) of the rules of civil procedure governs;[3] thus, the State argues, defense counsel was required to file postverdict motions within twenty days of the jury's verdict. Consequently, the State contends, our review is limited to: (1) a discretionary determination, in the interest of justice; and/or (2) a consideration of whether counsel was ineffective for failing to file postverdict motions within twenty days of the jury's verdict.

¶ 9. WISCONSIN STAT. ch. 980 is silent on this issue. As the parties recognize, however, in a ch. 980 proceeding, postverdict motions filed within twenty days of a verdict would, in most cases, be but a prelude to additional postdisposition motions. As the trial court observed in concluding that Treadway's motions were timely, "piecemeal appeals would . . . result" if the civil timeline for postverdict motions were applied.

¶ 10. We agree. Indeed, whether viewed as an appeal as a matter of right, or as an appeal addressed under either the interest-of-justice or ineffective-assistance-of-counsel standards the State suggests, a sexually violent person's challenges must not be precluded by counsel's failure to file postverdict motions within twenty days of the verdict. Concluding that such a failure constitutes waiver of appellate rights would work a manifest miscarriage of justice. *See* WIS.

---

[3] WISCONSIN STAT. § 805.16(1) (1997–98) states: "Motions after verdict shall be filed and served within 20 days after the verdict is rendered, unless the court, within 20 days after the verdict is rendered, sets a longer time by an order specifying the dates for filing motions, briefs or other documents." In this case, within twenty days after the verdict, Treadway's counsel did not request an extension of time for filing postverdict motions and the trial court did not extend the time.

STAT. § 752.35 (1999–2000). And, clearly, if counsel's failure were deemed to preclude appellate review (and if, in this context, the ch. 980 proceedings were deemed quasi-criminal), the failure would be deficient and prejudicial, thus constituting ineffective assistance of counsel. *See State v. Johnson*, 153 Wis. 2d 121, 127, 449 N.W.2d 845 (1990); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

■

¶ 11. We conclude, therefore, that while the legislature may choose to clarify this point by amending WIS. STAT. ch. 980, we need not, in the meantime, require counsel to jump through two hoops in order to preserve appellate rights. Accordingly, we conclude that a sexu- ally violent person committed under ch. 980 preserves the right to appeal, as a matter of right, by filing postverdict motions within twenty days of the commitment order. Thus, we now address the merits of Treadway's claims.

B. Timeliness of State's Petition

■

¶ 12. Treadway argues that the State failed to file its WIS. STAT. ch. 980 petition within ninety days of his release from a sentence for a sexually violent offense. *See* WIS. STAT. § 980.02(2)(ag) (1997–98);[4] *see also State v. Thiel*, 2000 WI 67, ¶ 38, 235 Wis. 2d 823, 612 N.W.2d 94 ("[I]n a trial on a commitment petition filed under Wis. Stat. § 980.02(2), the State bears the burden to

_____

[4] WISCONSIN STAT. § 980.02(2)(ag) (1997–98) provides, in part, that "[a] petition filed under this section shall allege that . . . [t]he person is within 90 days of discharge or release, on parole, extended supervision or otherwise, from a sentence that was imposed for a conviction for a sexually violent offense."

prove beyond a reasonable doubt that the petition was filed within 90 days of the subject's release or discharge from a sentence based on a sexually violent offense."); *see also, State v. Thiel,* 2001 WI App 52, 241 Wis. 2d 439, 625 N.W.2d 321, *review denied,* 2001 WI 88, 246 Wis. 2d 165, 630 N.W.2d 219 (No. 99–0316).

¶ 13. In 1981, Treadway was convicted of attempted second-degree sexual assault, an offense that qualifies as a "[s]exually violent offense" under Wis. Stat. § 980.01(6), thus potentially establishing the predicate offense for a Wis. Stat. ch. 980 petition. *See* Wis. Stat. § 980.01(6) (1997–98). His sentence for that offense, however, was only five years. But shortly after his 1984 mandatory-release parole for that offense, Treadway committed and was convicted of false imprisonment and three counts of reckless use of a weapon, as a habitual criminal. His parole was revoked and he returned to prison for nineteen additional months on the sexual assault sentence. He also received an aggregate sentence of seventeen years' imprisonment—eight years for the false imprisonment, and three years, consecutively, for each count of reckless use of a weapon, to be served concurrently with the sexual assault sentence. False imprisonment, however, is not a "sexually violent offense" under § 980.01(6) unless it is determined, in a proceeding under Wis. Stat. § 980.05(3)(b), that it was sexually motivated. *See* Wis. Stat. § 980.01(6)(b) (1997–98).[5]

¶ 14. Thus, approximately twelve years before his 1998 release from the seventeen-year aggregate sentence for false imprisonment and reckless use of a

---

[5] The State concedes that, at the commitment trial, it "did not argue that the 1984 false imprisonment conviction constituted a 'sexually violent offense' for purposes of the timing of its chapter 980 petition."

weapon, Treadway had completed his sentence for second-degree sexual assault. The State, however, filed its Wɪs. Sᴛᴀᴛ. ch. 980 petition within ninety days of Treadway's completion of his final sentence—the seventeen-year aggregate sentence. Thus, Treadway asserts that the petition was untimely.

¶ 15. Wisconsin appellate courts have not determined whether a Wɪs. Sᴛᴀᴛ. ch. 980 petition is timely, if filed within ninety days of an offender's discharge or release, when the offender has been serving *concurrent* sentences—for at least one sexually violent offense, for which the sentence was completed more than ninety days before the petition was filed; and for an offense that was not deemed a sexually violent offense, for which the sentence still was being served at the time the petition was filed. In *State v. Keith*, 216 Wis. 2d 61, 573 N.W.2d 888 (Ct. App. 1997), however, we addressed a similar issue: whether a ch. 980 petition is timely, if filed within ninety days of an offender's discharge or release, when the offender has been serving *consecutive* sentences—for at least one sexually violent offense, for which the sentence was completed more than ninety days before the petition was filed; and for a non-sexually-violent offense, for which the sentence still was being served at the time the petition was filed. *Id.* at 66–70. We concluded that a petition filed under these circumstances is timely. *Id.* at 72. In part, we explained:

> The Legislative Reference Bureau (LRB) note to the assembly bill which introduced [Wɪs. Sᴛᴀᴛ. § 980.02(2)(ag)] stated that a petition should allege that a subject be "within 90 days of release from custody, commitment or supervision resulting from a conviction or adjudication for a sexually violent offense." . . . [T]he LRB note suggests only a generalized

478

conception of custody, rather than an examination of the numerical order in which various offenses were sentenced. This makes sense in light of ch. 980's twin objectives of protecting the public and treating high[-] risk sex offenders to reduce the chance of future sexual misconduct. The risk that a sex offender may re-offend is not affected by the order in which he [or she] serves time on consecutive sentences, and the public is not endangered until the offender is actually released into the community.

In short, there is absolutely no indication that the legislature intended to predicate ch. 980 proceedings on whether a sexually violent offense was the last sentence ordered in a string of consecutive sentences.

*Id.* (citations omitted). We conclude that this reasoning also applies to a set of concurrent sentences.

■

¶ 16. Wisconsin Stat. § 980.02(2)(ag) (1997–98) requires that a ch. 980 petition allege that the subject is "within 90 days of discharge or release, on parole . . . or otherwise, from a sentence that was imposed for a conviction for a sexually violent offense." Here, as in *Keith,* application of that statute to undisputed facts presents a question of law for our independent review. *Id.* at 68.

¶ 17. Although portions of our discussion in *Keith* were linked to the specific nature of *consecutive* sentences, *see id.* at 71–72, our essential reasoning, springing from consideration of the statute's legislative history, encompasses *concurrent* sentences as well. To conclude otherwise would make no sense. *See Ashford v. Div. of Hearings & Appeals,* 177 Wis. 2d 34, 44, 501 N.W.2d 824 (Ct. App. 1993) (appellate court "will not interpret a statute in a way that produces absurd results"). After all, if the State were required to file its

WIS. STAT. ch. 980 petition within ninety days of the conclusion of a sentence for a sexually violent offense, despite the fact that the subject of the petition still could be serving additional time in an unbroken string of sentences, the petition could not accurately address the defendant's circumstances, mental condition, and treatment needs at the time of scheduled release. Discharge or release could be many months or, as in this case, many years away.

¶ 18. Moreover, in some cases, concurrent sentences, or concurrent and consecutive sentences, interlace, and some are further complicated by sentences after revocation. In such circumstances, the State easily could miscalculate the discharge or release date for the last sexually violent offense among the offenses not deemed sexually violent and miss the opportunity to seek WIS. STAT. ch. 980 commitment. Under such circumstances, both of ch. 980's "twin objectives"—the protection of the public and the treatment needs of the offender—would be disserved by precluding a court's consideration of commitment. *See Keith*, 216 Wis. 2d at 72; *see also Grobarchik v. State*, 102 Wis. 2d 461, 468, 307 N.W.2d 170 (1981) ("As employed in the language of the criminal law, a sentence of imprisonment is a term of incarceration or supervision on parole which continues until the defendant is finally discharged."). Thus, we conclude that because the State's petition was filed within ninety days of Treadway's release from a sentence for an offense that had not been deemed a sexually violent offense, which was being served concurrently with a shorter sentence imposed for a sexually violent offense, the petition was timely.

## C. Number of Peremptory Challenges

■

¶ 19. Treadway argues that the trial court erred in allowing him five peremptory challenges (four, plus one additional challenge to account for the selection of an additional juror), rather than the seven he requested. He claims that he was denied due process of law because a WIS. STAT. ch. 980 commitment may carry what, in effect, can become a "lifetime commitment" for those who are never released. Thus, he maintains, because a charge punishable by life imprisonment allows for six peremptory strikes plus one more for selection of an additional juror, he should have received seven here. *See* WIS. STAT. § 972.03 (1997–98).[6]

■

¶ 20. Treadway offers no specific argument or legal authority to support his due-process claim. *See* WIS. STAT. RULE 809.19(1)(e) & (3)(a) (1999–2000) (arguments in appellate briefs must be supported by authority). Indeed, as the Supreme Court observed, "it is important to recall that peremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial." *Georgia v. McCollum*, 505 U.S. 42, 57 (1992). Thus, because peremptory challenges are "creatures of state law," our task is "to configure the peremptory rights . . .

---

[6] WISCONSIN STAT. § 972.03 (1997–98) provides, in part: "When the crime charged is punishable by life imprisonment, the state is entitled to 6 peremptory challenges and the defendant is entitled to 6 peremptory challenges . . . . Each side shall be allowed one additional peremptory challenge if additional jurors are to be selected under s. 972.04(1) [regarding the exercise of challenges]."

in Wisconsin on the basis of Wisconsin law." *State v. Lindell,* 2001 WI 108, ¶ 58, 245 Wis. 2d 689, 629 N.W.2d 223 (determining the peremptory rights of a defendant in a criminal case), *reconsideration denied,* 2001 WI 117, 247 Wis. 2d 1039, 635 N.W.2d 786. Doing so, we reject Treadway's argument.

¶ 21. Unlike a criminal defendant incarcerated for a life sentence, a person committed under Wis. Stat. ch. 980 is entitled to periodic review by the Department of whether release, conditional or otherwise, is appropriate, *see* Wis. Stat. § 980.07 (1999–2000), and to judicial review under some circumstances, *see* Wis. Stat. §§ 980.07, 980.08, 980.09, & 980.10 (1999–2000). Thus, Treadway's attempt to equate his circumstances with those of a criminal defendant imprisoned for life fails.

¶ 22. Moreover, as the State explains, Treadway actually received *more* peremptory challenges than he should have been allowed. Because a Wis. Stat. ch. 980 proceeding is a civil one, the rules of civil procedure apply unless a "different procedure is prescribed by statute or rule." *State v. Brown,* 215 Wis. 2d 716, 718–19, 573 N.W.2d 884 (Ct. App. 1997). Wisconsin Stat. § 805.08(3) (1997–98) provides, in part, that "[e]ach party shall be entitled to 3 peremptory challenges" plus "one peremptory challenge in addition to those otherwise allowed by law if additional jurors are to be selected." Treadway points to no other statute or rule that would displace § 805.08(3) in this case; he offers no reply to the State's argument. *See State v. Peterson,* 222 Wis. 2d 449, 459, 588 N.W.2d 84 (Ct. App. 1998) (unrefuted argument deemed admitted). Thus, we conclude, notwithstanding the potential for a Wis. Stat. ch. 980 commitment to last a lifetime, Treadway

has failed to establish that he was entitled to any more peremptory challenges than those allowed under the rules of civil procedure.[7]

## D. Probation and Parole Agent's Testimony

¶ 23. Treadway argues that the trial court erred in allowing probation and parole agent Christopher Kittman to testify regarding the likelihood that he would reoffend. He contends that because Kittman "was not a trained psychologist or mental health professional," he was not qualified to offer an opinion

---

[7] Treadway also argues that the trial court improperly forced him to use one of his peremptory challenges to strike a juror whom, he claims, should have been removed for cause. The juror was a Milwaukee County Deputy Sheriff who, on prior occasions, had worked as a relief bailiff for the circuit court judge who was trying Treadway's case. She also was the niece-in-law of a former Secretary of the Wisconsin Department of Corrections. The juror, however, stated that she could be impartial, and the trial court denied Treadway's motion to strike her for cause.

Treadway contends that the trial court erred in denying his motion to strike for cause and, therefore, that he is entitled to a new trial. He relies on *State v. Ramos*, 211 Wis. 2d 12, 564 N.W.2d 328 (1997), requiring a new trial where a court improperly denies a motion to strike for cause and, as a result, effectively forces a defendant to use a peremptory challenge to remove the juror who should have been stricken. *See id.* at 14–16. That rule of *Ramos*, however, was overruled in *State v. Lindell*, 2001 WI 108, ¶¶ 111–20, 245 Wis. 2d 689, 629 N.W.2d 223. Moreover, given that Treadway actually received more peremptory challenges than he should have been allowed, even the reasoning of *Ramos* could not help him here. Thus, we need not determine whether the trial court erred in denying his motion to strike the juror for cause.

"regarding dangerousness or likelihood of reoffense" or to "connect the likelihood of reoffense to any mental disorder" and, therefore, his opinion was irrelevant and should have been excluded.

¶ 24. Treadway relies on *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995), which, in his estimation, requires the exclusion of "an opinion of dangerousness without a nexus to a mental disorder"—a disorder he contends Kittman was not qualified to diagnose and a nexus he contends Kittman was not qualified to provide. Overruling Treadway's objection, however, the trial court implied that Treadway's challenge was really aimed at the weight of Kittman's testimony, not its admissibility. The court also recognized that the State was not relying solely on Kittman; rather, that it was offering Kittman's opinion, in part, as a "foundation" supporting the State's next witness, Dr. Sheila J. Fields, a psychologist. Thus, the court concluded, Kittman could "testify as to his opinion with regard to a risk assessment, of how dangerous he feels the defendant would be." We agree.

¶ 25. Kittman testified that, for three years, he had been a Wisconsin Department of Corrections probation and parole agent assigned full-time to a specialized sex-offender unit. At the time of Treadway's Wis. Stat. ch. 980 trial, Kittman was handling all the ch. 980 "processes" for Milwaukee County. Asked whether "specific standards and procedures" were utilized by agents in supervising clients, Kittman responded:

> Yes. The basics are needs versus risks. There's criteria and classifications that we use to monitor different offenders, how often we will see them, how much surveillance we will have on them. We take into consideration treatment issues, that they have com-

pleted treatment, their past record, attitude, past behavior, and that's basically it.

¶ 26. Assigned to Treadway's case in June 1999, approximately two months before Treadway's trial, Kittman had reviewed Treadway's entire case file, dating to offenses Treadway committed in 1978. Kittman testified that the file included "a social area pertaining to [Treadway's] past correctional experience, family history, his past, his living, his entire life basically," as well as his criminal convictions, "violation report and locational summaries, pre-sentence investigations . . ., police records, institutional paperwork," and other materials.[8]

¶ 27. In his testimony, Kittman related the nature of Treadway's many offenses, his poor compliance with supervision, his refusal to participate in sex-offender treatment programs, and his numerous conduct reports while incarcerated, including those involving assaultive behavior. Kittman also explained that, as part of his duties, he conducted "risk assessments," for which he had been trained by the Department of Corrections, in order to "determine [the] risk of the individual and how we will supervise him in the community[; the] level of surveillance that we will maintain on the offender." To complete such an assessment, Kittman elaborated:

> We take into consideration all aspects of the offender's life. We take into consideration past criminal offenses, the assaultiveness of those offenses, how they would cooperate with treatment, if they completed treatment, stable residence, stable employment, if

---

[8] Our summary of Kittman's testimony on the contents of Treadway's case file is incomplete due to a missing transcript page. *See* Record 41, transcript of proceedings of August 30, 1999, at 70–72.

they're deemed to be mentally ill, if they take their prescribed medication, ongoing use of alcohol and drugs, and then there's a compilation[,] and then from there it's decided on a level of risk.

Kittman testified that he had done a risk assessment of Treadway and had concluded that Treadway's risk of reoffending was "[v]ery high."

¶ 28. WISCONSIN STAT. § 980.05(1m) (1997–98) states, in part, "At the trial to determine whether the person who is the subject of a petition under section 980.02 is a sexually violent person, all rules of evidence in criminal actions apply." Thus, to consider Treadway's claim, we refer to WIS. STAT. § 907.02 (1997–98):

> **Testimony by Experts.** If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

A trial court has discretion to determine whether proffered expert testimony satisfies the statutory criteria; we will not reverse the trial court's determination absent an erroneous exercise of discretion. *See State v. Donner*, 192 Wis. 2d 305, 317, 531 N.W.2d 369 (Ct. App. 1995); *see also State v. Walstad*, 119 Wis. 2d 483, 519, 351 N.W.2d 469 (1984). Here, we conclude that the trial court correctly allowed Kittman's testimony.

¶ 29. The fact that Kittman was not a psychologist or mental health specialist did not preclude his testimony. Under WIS. STAT. § 907.02 (1997–98), relevant experience, education, and/or training may qualify a witness to testify as an expert. *See State v. Hollingsworth*, 160 Wis. 2d 883, 895–96, 467 N.W.2d

555 (Ct. App. 1991); *see also Tanner v. Shoupe*, 228 Wis. 2d 357, 373–75, 596 N.W.2d 805 (Ct. App. 1999). At the time of Treadway's trial, Kittman was actively supervising about thirty-five released sex offenders and monitoring approximately fifty incarcerated sex offenders. He had been employed full-time in the specialized sex-offender unit for three years during which he had supervised hundreds of sex offenders. Clearly, central to Kittman's professional responsibility was the ability to assess whether those he was supervising would reoffend. Prepared by both training and experience to assess Treadway, he was qualified to render an opinion on whether Treadway would reoffend. *See* WIS. STAT. § 907.04 (1997–98) ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.").

¶ 30. Additionally, the fact that Kittman did not provide the nexus to any mental disorder did not render his testimony inadmissible. In *Post,* the supreme court clarified that the "key to the constitutionality of the definition of mental disorder in chapter 980 is that it requires a nexus—persons will not fall within chapter 980's reach unless they are diagnosed with a disorder that has the specific effect of predisposing them to engage in acts of sexual violence." *Post,* 197 Wis. 2d at 306. Certainly, however, the supreme court was not requiring that testimony about an offender's history, and testimony relating that history to a diagnosed mental disorder, come from a single witness. *See State v. Zanelli,* 223 Wis. 2d 545, 555–56, 589 N.W.2d 687 (Ct. App. 1998) (WISCONSIN STAT. § 980.05(3)(a) "does not confine expert testimony to any specific standard; it

does not mandate the type or character of relevant evidence the State may choose to meet its burden of proof.").

¶ 31. Here, Kittman's assessment of Treadway's risk of reoffending was relevant to Treadway's "dangerousness" under WIS. STAT. ch. 980, *see* WIS. STAT. § 980.02(2)(c) (1997–98), and his testimony about Treadway's history, as well as his opinion that Treadway's risk of reoffending was very high, logically connected to the additional evidence the State introduced through the testimony of Dr. Fields. *See State v. Pharr*, 115 Wis. 2d 334, 346, 340 N.W.2d 498 (1983) (" '[A]ny fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable.' ").

### E. Sufficiency of Evidence

¶ 32. Finally, Treadway asserts that the evidence was insufficient to support the jury's finding that he was a sexually violent person. In support of his argument, he contends: (1) that Dr. Fields "had no background in predicting future dangerousness," and that "[m]uch of her testimony was based upon her own beliefs and not on the actual information in the file"; (2) that he had been convicted of only one sexually violent offense, but that Dr. Fields "presumed," based on "absolutely no objective evidence," that because some of his other crimes involved women, they also were sexually motivated; (3) that he passed a penile plethysmograph test, showing "no response to children or to 'no consent' scenarios"; and (4) that evidence of his "institutional misconduct" should not have been admitted because its prejudicial effect outweighed its probative value.

██

¶ 33. To establish the basis for a WIS. STAT. ch. 980 commitment, the State must prove beyond a reasonable doubt that an offender is a sexually violent person. WIS. STAT. § 980.05(3)(a) (1997–08). Under WIS. STAT. § 980.01(7) (1997–98):

> "Sexually violent person" means a person who has been convicted of a sexually violent offense, has been adjudicated delinquent for a sexually violent offense, or has been found not guilty of or not responsible for a sexually violent offense by reason of insanity or mental disease, defect or illness, and who is dangerous because he or she suffers from a mental disorder that makes it substantially probable that the person will engage in acts of sexual violence.

We will not reverse a ch. 980 commitment " 'unless the evidence, viewed most favorably to the [S]tate and the [commitment], is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found [the defendant to be a sexually violent person] beyond a reasonable doubt.'" *State v. Marberry*, 231 Wis. 2d 581, 593, 605 N.W.2d 612 (Ct. App. 1999).

¶ 34. Treadway's argument on this issue, minimally supported by authority and completely devoid of references to the record, has little merit. *See* WIS. STAT. RULE 809.19(1)(e) & (3)(a) (1999–2000); *see also Barakat v. DHSS*, 191 Wis. 2d 769, 786, 530 N.W.2d 392 (Ct. App. 1995) (appellate court need not consider "amorphous and insufficiently developed" arguments). While we need not address Treadway's claims, we do note that Treadway has offered no reply to any of the State's comprehensive responses, which include:

(1) The record establishes that Dr. Fields, a psychologist with the Mendota Mental Health Insti-

tute had worked with sex offenders since 1975, conducted twenty-one Wis. Stat. ch. 980 evaluations, reviewed Treadway's case, interviewed Treadway and applied various testing instruments designed to predict future dangerousness, consulted with other psychologists and evaluators, and thus had ample background and expertise to support her testimony.

(2) Dr. Fields testified that Treadway suffered from two mental disorders: paraphilia, not otherwise specified, non-consent; and personality disorder, not otherwise specified, with antisocial features. She also testified that, as a result of these disorders, Treadway was predisposed to commit acts of sexual violence.

(3) The record supports Dr. Field's opinion that one of Treadway's offenses, which had not previously been proven by the State to be sexually violent, was sexually motivated; indeed, the victim perceived that Treadway was going to rape her.

(4) Treadway has provided no authority to support his implicit argument that a negative result on a penile plethysmograph test precludes a finding that an offender is a sexually violent person.

(5) Treadway never objected to the introduction of evidence of his "institutional misconduct."

See Peterson, 222 Wis. 2d at 459 (unrefuted arguments deemed admitted). Treadway, therefore, has offered nothing to establish that the evidence was insufficient to support the jury's finding that he was a sexually violent person.

By the Court.—Order affirmed.