IN RE the COMMITMENT OF
Carl Cornelius GILBERT, Jr.:

STATE of Wisconsin,
Petitioner-Respondent,

v.

Carl Cornelius GILBERT, Jr.,
Respondent-Appellant-Petitioner.

IN RE the COMMITMENT OF Price T. HUNT:

STATE of Wisconsin,
Petitioner-Respondent,

v.

Price T. HUNT,
Respondent-Appellant-Petitioner.

Supreme Court

*No. 2010AP594 & 2010AP1155.*
*Oral argument January 10, 2012.—Decided June 29, 2012.*

2012 WI 72

(Also reported in 816 N.W.2d 215.)

In case 2010AP594:

For the respondent-appellant-petitioner there were briefs filed by *Ellen Henak,* and *Hannah B. Schieber,* assistant state public defenders and oral argument by *Hannah B. Schieber.*

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *J.B. Van Hollen.*

In case 2010AP1155:

For the respondent-appellant-petitioner there were briefs filed by *Michael J. Gonring, Leah Stoecker, Eric J. Van Schyndle, Allison E. Cimpl-Wiemer* and *Quarles and Brady, LLP,* Milwaukee and oral argument by *Eric J. Van Schyndle.*

For the petitioner-respondent the cause was argued by *Warren D. Weinstein,* assistant attorney general, with whom on the brief was *J.B. Van Hollen.*

¶ 1. MICHAEL J. GABLEMAN, J. We review a published decision of the court of appeals[1] affirming orders of the circuit court for Milwaukee County, Jeffrey A. Wagner and Jeffrey A. Conen, Judges.[2]

¶ 2. We are asked to decide whether Wisconsin Statutes chapter 980 (2005–06)[3] requires the dismissal of a pending commitment petition when the individual subject to the petition is re-incarcerated because of the revocation of parole or extended supervision. We hold that the State may proceed with a ch. 980 commitment after the revocation of a subject individual's parole or extended supervision. Based on that holding, we conclude that both of the ch. 980 commitments at issue in this case are valid, and therefore affirm the court of appeals.

---

[1] *State v. Gilbert,* 2011 WI App 61, 333 Wis. 2d 157, 798 N.W.2d 889.

[2] Gilbert and Hunt's cases were heard independently at the circuit court level, but were consolidated by the court of appeals.

[3] All subsequent references to the Wisconsin Statutes are to the 2005–06 version unless otherwise indicated.

## I. FACTS AND PROCEDURAL HISTORY

¶ 3. The facts of these cases are undisputed and we will address the facts of Gilbert and Hunt's ("Petitioners") cases in turn.

### A. Carl Cornelius Gilbert, Jr.

¶ 4. Carl Cornelius Gilbert, Jr. ("Gilbert") was convicted of second-degree sexual assault and was sentenced to ten years in prison.[4] On December 4, 2006, while Gilbert was still in the custody of the Department of Corrections ("DOC"), the State filed a petition seeking his commitment pursuant to Wis. Stat. § 980.02. The same day, the circuit court reviewed the petition, found probable cause to believe Gilbert was eligible for commitment, and ordered Gilbert detained by the DOC and transferred to a facility approved by the Department of Health Services ("DHS"). A day later, the DOC released Gilbert on parole and transferred him to the Wisconsin Resource Center ("WRC") in Winnebago, Wisconsin, which is maintained and operated by DHS.

¶ 5. Less than ten days after being transferred to WRC, Gilbert violated the conditions of his parole. Consequently, the DOC placed a "hold" on his parole, and on January 19, 2007, he was transferred to the Milwaukee Secure Detention Facility ("MSDF"), which is maintained and operated by the DOC. While the issue of determination of Gilbert's parole revocation was pending, a hearing was held on March 22, 2007, where the circuit court found probable cause to believe that Gilbert was a "sexually violent person" within the meaning of Wis. Stat. ch. 980 and ordered him trans-

---

[4] Second-degree sexual assault is a predicate offense under Wis. Stat. § 980.01(6)(a).

ferred for evaluation to the WRC "or such other authorized institution as may be determined by the [DHS]." However, on August 8, 2007, Gilbert's parole was revoked, and he was re-incarcerated, this time at Dodge Correctional Institution, which is maintained and operated by the DOC.

¶ 6. On October 17, 2007, DOC granted Gilbert parole a second time and transferred him back to WRC, pending resolution of the Wis. Stat. ch. 980 commitment petition filed on December 4, 2006. On November 25, 2007, Gilbert violated the terms of his second parole. As a result, he was re-incarcerated at the MSDF pending his revocation hearing, and his parole was revoked on December 28, 2007.

¶ 7. On February 4, 2008, Gilbert's ch. 980 commitment trial began. After a three-day trial, the jury found him to be a "sexually violent person" within the meaning of § 980.01(1). Following the trial, the circuit court entered a commitment order pursuant to Wis. Stat. § 980.06. He was not, however, sent back to WRC or to any other DHS facility, but rather was transferred by the DOC to Waupun Correctional Institution to serve the balance of his sentence that resulted from the December 28, 2007, revocation. He then served out the remainder of the sentence resulting from his second revocation in the custody of the DOC. In accordance with the condition of this period of incarceration, Gilbert was transferred to the custody of the DHS.

¶ 8. On January 15, 2009, while in the custody of the DHS, Gilbert brought a post-conviction motion in which he asserted that his December 28, 2007 parole revocation required dismissal of the ch. 980 petition. On December 17, 2009, the circuit court held a motion hearing, and on February 18, 2010, the circuit court

issued an oral ruling denying the motion. Gilbert appealed this motion to the court of appeals.

### B. Price T. Hunt

¶ 9. Price T. Hunt ("Hunt") was convicted of third-degree sexual assault[5] and misdemeanor battery. Hunt was sentenced to a term of incarceration of ten years, consisting of five years initial confinement and five years extended supervision. His expected release date from incarceration to extended supervision was September 4, 2007.

¶ 10. On August 23, 2007, the State filed a Wis. Stat. ch. 980 commitment petition, seeking Hunt's commitment as a sexually violent person. On the same day that the State filed the petition, the circuit court found there was probable cause to believe that Hunt met the statutory criteria for a ch. 980 commitment. The court ordered Hunt transferred to a detention facility approved by the DHS pending the resolution of the ch. 980 commitment petition. In compliance with this order, Hunt was transferred to the WRC (and DHS custody) when he was released to extended supervision in September of 2007. On October 16, 2007, the circuit court found probable cause to believe that Hunt was a "sexually violent person" within the meaning of § 980.01(1).

¶ 11. While in the custody of the DHS, and while his commitment trial was pending, Hunt violated the terms of his extended supervision. His extended supervision was subsequently revoked on May 29, 2008. About a month after the revocation of Hunt's extended supervision, but before his re-incarceration, he moved

---

[5] Third-degree sexual assault is a predicate offense under Wis. Stat. § 980.01(6)(b).

to dismiss the commitment petition, or in the alternative, to be transferred to "an approved DHS facility." Following the filing of this motion, but prior to the hearing on it, the circuit court ordered Hunt reconfined for two years, and Hunt was transferred to the Racine Correctional Institution. A hearing on the motion was held on September 29, 2008, after which the circuit court denied both Hunt's motion to dismiss and the request to be transferred.

¶ 12. Hunt's commitment case was tried in July of 2009, and the circuit court found him to be a sexually violent person and ordered commitment.

¶ 13. On May 7, 2010, Hunt appealed the order denying his motion to dismiss and the judgment and commitment order. The court of appeals consolidated Gilbert and Hunt's appeals. *See State v. Gilbert,* 2011 WI App 61, 333 Wis. 2d 157, 798 N.W.2d 889. The court of appeals affirmed the circuit court and held that dismissal of a Wis. Stat. ch. 980 proceeding is not required when the subject of the petition is transferred to the custody of the DOC before a ch. 980 commitment order is entered. *Id.,* ¶ 1. Hunt remained at the Racine Correctional Institution in the custody of the DOC until March 30, 2010—the scheduled conclusion of his sentence—when he was transferred to the WRC, where he is currently confined. Gilbert and Hunt petitioned for review from this court, which we granted.

## II. STANDARD OF REVIEW

■■

¶ 14. We are required to construe Wis. Stat. ch. 980. This is a matter of statutory interpretation, and therefore a question of law that the court reviews de novo. *Noffke ex rel. Swenson v. Bakke,* 2009 WI 10, ¶ 9,

315 Wis. 2d 350, 760 N.W.2d 156. We interpret statutes independently, but benefit from both our prior analyses and that of prior courts. *State v. Henley,* 2010 WI 97, ¶ 29, 328 Wis. 2d 544, 787 N.W.2d 350.

## III. STATUTORY INTERPRETATION

¶ 15. Statutory interpretation "begin[s] with the language of the statute, because it is the language that expresses the legislature's intent." *Hocking v. City of Dodgville,* 2010 WI 59, ¶ 18, 326 Wis. 2d 155, 785 N.W.2d 398 (citing *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶¶ 44–45, 271 Wis. 2d 633, 681 N.W.2d 110). Moreover, "[w]e attempt, whenever possible, to give reasonable effect to every word, avoiding both surplusage and absurd or unreasonable results." *Id.,* ¶ 18 (citing *Kalal,* 271 Wis. 2d 633, ¶ 46).

¶ 16. In addition to the plain language of the statute, "scope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute." *Kalal,* 271 Wis. 2d 633, ¶ 48. Further, "[a] review of statutory history is part of a plain meaning analysis." *Richards v. Badger Mut. Ins. Co.,* 2008 WI 52, ¶ 22, 309 Wis. 2d 541, 749 N.W.2d 581. Accordingly, we examine the language, context, purpose, and history of Wis. Stat. ch. 980 while undertaking our analysis.

## IV. DISCUSSION

¶ 17. Although the facts of the Petitioners' cases are different, they present the court with a single issue for review: Whether Wis. Stat. ch. 980 requires the dismissal of a pending commitment petition when the individual subject to the petition is incarcerated because

of the revocation of either parole or extended supervision. We hold that ch. 980 does not require such a dismissal, and accordingly conclude that both Gilbert and Hunt were properly committed under ch. 980 after their parole and extended supervision, respectively, was revoked.

¶ 18. The Petitioners make slightly different arguments with regard to the issue presented by this case.[6] Gilbert makes three arguments: First, that proceeding with a Wis. Stat. ch. 980 petition after a parole revocation violates the plain language of ch. 980; second, that interpreting ch. 980 to allow simultaneous commitment and incarceration would result in unconstitutional violations of the protections against double jeopardy and ex post facto laws, as well as in violations of substantive due process; and third, that the ch. 980 petitions are moot when the State revokes parole and returns the individual to prison.

¶ 19. Hunt makes three similar arguments: First, that allowing a Wis. Stat. ch. 980 petition to continue when the subject of the petition is returned to prison is contrary to the express language of the statute; second, that *State v. Szulczewski*, 216 Wis. 2d 495, 574 N.W.2d 660 (1998) and *State v. White*, 2000 WI App 147, 237 Wis. 2d 699, 615 N.W.2d 667 deny a circuit court the discretion to stay a chapter 980 commitment proceeding in favor of imposing a prison sentence;[7] and third, that

_____

[6] Gilbert and Hunt's arguments, although not identical, often cover what is substantively the same ground. Accordingly, we refer to their arguments collectively as the "Petitioners' arguments."

[7] We need not address this argument or Gilbert's argument that ch. 980 petitions are moot when the State revokes parole and returns the individual to prison because we conclude that ch. 980 does not preclude simultaneous incarceration and

permitting a ch. 980 petition to continue when the subject of the petition is incarcerated removes the constitutional protections of due process.[8]

¶ 20. We agree with the court of appeals that each of the Petitioners' arguments are centered on the statutory interpretation of Wis. Stat. ch. 980. For that reason, the court of appeals disposed of the Petitioners' constitutional arguments in a single footnote. *See Gilbert,* 333 Wis. 2d 157, ¶ 11 n.9 (interpreting the Petitioners' constitutional arguments as relying "entirely on their interpretations of Wis. Stat. ch. 980" and as "not developed beyond their interpretations of ch. 980."). Because we believe that each of the Petitioners' arguments are centered on the interpretation of the statute, we first turn to a brief overview of ch. 980.

¶ 21. Wisconsin Stat. ch. 980 "provides for the involuntary commitment of certain individuals who are found to be sexually violent persons."[9] *State v. Carpenter,* 197 Wis. 2d 252, 541 N.W.2d 105 (1995). As such, ch.

---

commitment. Therefore, the circuit court does not need to stay the proceedings, and the proceedings are not moot even if parole or extended supervision is revoked before a commitment order is entered.

[8] Hunt's constitutional arguments are unclear. His initial brief to this court contained scant argument—slightly more than 500 words, including citation—addressing his constitutional concerns. In this section of his argument, the words "due process" appear only once, and no other constitutional argument is made. In his reply brief, Hunt provides only a conclusory sentence alleging that his due process rights were violated.

[9] For a history of ch. 980 and other states' sexual offender commitment laws, see generally Juliet M. Dupuy, Comment, *The Evolution of Wisconsin's Sexual Predator Law,* 79 Marq. L. Rev. 873 (1996), and Rebecca Kennedy Hamrin, Comment, *Supervised Release Under Chapter 980: Alternatives to Protect Wisconsin While Upholding the Constitution,* 2007 Wis. L. Rev. 889.

980 prescribes a detailed procedure that the State must follow in order to commit a sexually violent person.[10]

¶ 22. The Petitioners do not contend that the State violated any of the procedures of Wis. Stat. ch. 980; instead, they allege ch. 980 does not contain suitable procedures for commitment after parole or extended supervision is revoked and the individual subject to the petition is re-incarcerated. We do not agree. Our review of ch. 980 reveals that the statute allows a ch. 980 commitment petition to proceed through its normal course after parole or extended supervision has been revoked. We turn first to a review of the purpose of ch. 980, because the purpose of ch. 980 informs our interpretation of its language.

A. The Purpose of Chapter 980
Does Not Require Dismissal

¶ 23. The primary goal of Wis. Stat. ch. 980 is two-fold: 1) the treatment of sexually violent persons, and 2) the protection of society from those persons. *See* *State v. West*, 2011 WI 83, ¶ 27, 336 Wis. 2d 578, 800 N.W.2d 929; *State v. Post*, 197 Wis. 2d 279, 308, 541

---

[10] We reviewed the constitutionality of ch. 980's procedures as a whole in 1995 in two cases: *State v. Carpenter*, 197 Wis. 2d 252, 541 N.W.2d 105 (1995), and *State v. Post*, 197 Wis. 2d 279, 541 N.W.2d 115 (1995). In those cases, we determined, inter alia, that ch. 980 commitments do not violate the constitutional prohibitions of double jeopardy and ex post facto laws, *see* *Carpenter*, 197 Wis. 2d at 259, or substantive due process and equal protection, *see Post*, 197 Wis. 2d at 293–94. *See generally* Erich C. Straub & James E. Kachelski, *The Constitutionality of Wisconsin's Sexual Predator Law*, Wis. Law., July 1995.

N.W.2d 115 (1995); *Carpenter,* 197 Wis. 2d at 271 ("[T]he principal purposes of ch. 980 are the protection of the public and the treatment of convicted sex offenders." (quoting *Jones v. United States,* 463 U.S. 354, 368 (1983))). This purpose highlights the fact that ch. 980 is not a punitive provision, but instead provides a means for treating sexually violent persons "who are at a high risk to reoffend in order to reduce the likelihood that they will engage in such conduct in the future." *Carpenter,* 197 Wis. 2d at 271.

¶ 24. We have consistently interpreted Wis. Stat. ch. 980 in light of this purpose. In *West,* we reviewed the history of several amendments to ch. 980, emphasizing that, with each successive amendment, the legislature has increasingly demonstrated its concern for the protection of the public. 336 Wis. 2d 578, ¶¶ 42–44 (discussing three separate amendments that added protections for the public from sexually violent persons).

¶ 25. In *State ex rel. Marberry v. Macht,* we held that "[r]elease of a ch. 980 patient whose dangerousness or mental disorder has not abated serves neither to protect the public nor provide care and treatment for the patient." 2003 WI 79, ¶ 30, 262 Wis. 2d 720, 665 N.W.2d 155, *cert. denied* 540 U.S. 997 (2003). In that case, we declined to order the release of a sexually violent person, because release was "not justifiable under the dual purposes of the statute: protection of the public from sexually violent persons likely to reoffend and care and treatment of the patient." *Id.* In *State v. Schulpius,* we reiterated our holding in *Marberry* that even "where there was a violation of procedural due process . . . release is not only inappropriate, it is not justifiable under the dual purposes of the statute." 2006 WI 1, ¶ 39, 287 Wis. 2d 44, 707 N.W.2d 495, *cert. denied* 547 U.S. 1138 (2006) (quoting *Marberry,* 262 Wis. 2d 720, ¶ 30).

¶ 26. In light of these cases, it is clear that the protection of the public from sexually violent persons is of central importance in Wis. Stat. ch. 980 cases. We continue our review of ch. 980 with this principle in mind. We turn next to a discussion of the language of ch. 980, ultimately determining that it does not require the dismissal of a pending commitment petition when the individual subject to the petition is re-incarcerated because of the revocation of parole or extended supervision.

## B. Chapter 980 and Re-Incarceration

¶ 27. Wisconsin Stat. ch. 980 does not expressly address the issue presented by this case: Whether ch. 980 requires the dismissal of a pending commitment petition when the individual subject to the petition is incarcerated because of a revocation of parole or extended supervision. However, the statute provides procedures for similar situations, and thereby provides guidance for our resolution of the issues in this case.

¶ 28. We examine three portions of Wis. Stat. ch. 980 that are relevant to our determination of whether dismissal is required in these cases. We conclude that ch. 980 does not require such a dismissal because it: 1) does not contain language allowing for dismissal in this case; 2) does not set a time period for execution of a commitment order; and 3) states that an individual may be simultaneously committed under ch. 980 and incarcerated at a DOC facility.[11] We address each of these three components of ch. 980 in turn.

_____

[11] The dissent takes issue with us for allegedly interpreting "statutory provisions in isolation while ignoring the context set forth in surrounding provisions." Dissent, ¶ 81 (citing *State ex*

### 1. Chapter 980 Provides Only Two Means for Dismissal of a Chapter 980 Commitment Petition

¶ 29. The thrust of the Petitioners' argument is that the circuit court must dismiss a pending Wis. Stat. ch. 980 commitment petition if the individual subject to the petition is re-incarcerated for a parole or extended supervision revocation. The language of ch. 980, however, authorizes only two methods by which a circuit court may dismiss a pending commitment petition: 1) failure to find probable cause "to believe that the person is a sexually violent person" under § 980.04(3), or 2) failure to prove "beyond a reasonable doubt that the person is a sexually violent person" under § 980.05(5).[12]

rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110). In fact, our approach to ch. 980 is a holistic one, and, by examining the inner workings of the statute related to this case, undertakes an analysis of its context. See Part IV.B.1. (discussing that ch. 980 provides only two means for dismissal of a ch. 980 commitment petition); Part IV.B.2. (discussing that nothing in the language or context of ch. 980 requires immediate execution of a commitment order); Part IV.B.3. (discussing that section 980.07(6m) does not conflict with ch. 980 when it allows an individual to be simultaneously committed under ch. 980 and incarcerated at a DOC facility).

The dissent takes an alternative approach. See Dissent, ¶ 98 (stating that the reason for the 2005 changes to ch. 980 are "revealed by examining th[e] legislative history"). It undertakes an analysis that is representative of the precise evil that Kalal was designed to combat: the use of legislative history in lieu of the language of the statute. See Kalal, 271 Wis. 2d 633, ¶ 51.

[12] The State suggests that Wis. Stat. ch. 980 provides two means for terminating a commitment: vacating the judgment under § 980.101(2)(a), and discharge under § 980.09. However, neither of these provisions is relevant to the issue in this case, because both deal with the termination of commitment after the entry of an order of commitment under § 980.06. The issue in

¶ 30. Nothing in Wis. Stat. ch. 980 requires dismissal of a pending commitment petition under the conditions proposed by the Petitioners; therefore, it is unreasonable to assume that the legislature impliedly authorized circuit courts to dismiss pending ch. 980 commitment petitions when the individual subject to the petition has been re-incarcerated for a subsequent parole or extended supervision violation.[13] *See Noffke,* 315 Wis. 2d 350, ¶ 27 n.7 ("[E]very word excluded from

this case deals with the dismissal of a petition, not a final commitment order.

[13] This reasoning is especially persuasive given that the legislature has amended Wis. Stat. ch. 980 thirty times in less than twenty years, and every successive legislature has made some change to ch. 980. *See* 1995 Wis. Act 27, § 9126(19)(a); 1995 Wis. Act 77, §§ 693 to 698; 1995 Wis. Act 225, § 536; 1995 Wis. Act 276, §§ 2g, 2k, 2n; 1995 Wis. Act 440, §§ 106 to 114; 1997 Wis. Act. 27, §§ 5491b to 5491x; 1997 Wis. Act. 181, §§ 112 to 114; 1997 Wis. Act. 205, §§ 104 to 105; 1997 Wis. Act. 252, § 193; 1997 Wis. Act. 275, §§ 8e to 8f; 1997 Wis. Act 283, §§ 450 to 453; 1997 Wis. Act 284, §§ 4 to 10; 1997 Wis. Act 295, § 48; 1999 Wis. Act 9, §§ 3216d, 3217d to 3220d, 3221, 3222d, 3223c, 3223h to 3223L, 3230m, 3231m, 3232, 3232p to 3238d, 3238h, 3238j, 3238t, 3239, 3239d; 1999 Wis. Act 32, §§ 409, 410; 1999 Wis. Act 185, § 193(1); 1999 Wis. Act 407, §§ 407 to 408; 2001 Wis. Act 16, §§ 4034ye to 4034yt, 9259(12j); 2003 Wis. Act 187, §§ 1 to 7; 2005 Wis. Act 253, § 174; 2005 Wis. Act 277, §§ 96, 97; 2005 Wis. Act 344, §§ 633 to 635; 2005 Wis. Act 431, §§ 15 to 20; 2005 Wis. Act 434, §§ 60 to 130; 2007 Wis. Act 20, §§ 3928 to 3930, 9121(6)(a); 2007 Wis. Act 96, §§ 171 to 174; 2007 Wis. Act 97, §§ 331 to 334; 2009 Wis. Act 26, § 13; 2009 Wis. Act 28, §§ 3401, 3405; 2009 Wis. Act 248, § 1. Currently, two bills are under review that would further amend ch. 980. *See* 2011 S.B. 169; 2011 S.B. 214. Given this cavalcade of proposed and enacted amendments, it is unreasonable to assume that the legislature intended to require the dismissal of a pending ch. 980 commitment petition if the individual subject to the petition is re-incarcerated on a parole or extended supervision violation, and simply forgot to create a provision to do so.

a statute must be presumed to have been excluded for a purpose . . . ."). The legislature could have included a provision in ch. 980 requiring dismissal in such situations, but it did not. We will not judicially engraft such a dismissal requirement into the statute. *See Heritage Farms, Inc. v. Markel Ins. Co.*, 2009 WI 27, ¶ 41, 316 Wis. 2d 47, 762 N.W.2d 652 (holding that this court does not insert words into statutes). In short, the statute provides no indication that a circuit court should do anything but consider a ch. 980 commitment petition if the individual subject to the petition is re-incarcerated for a parole or extended supervision violation.

¶ 31. Our conclusion that Wis. Stat. ch. 980 does not require dismissal is consistent with our prior holdings regarding its purposes. As we have discussed, one of the purposes of ch. 980 is the "protection of the public," *Carpenter*, 197 Wis. 2d at 258, and we have described release from custody of an individual still considered dangerous as incompatible with this goal, *Marberry*, 262 Wis. 2d 720, ¶ 30. We would do violence to the purpose of ch. 980 if we were to conclude that dismissal of a pending ch. 980 commitment petition is warranted where the language of the statute does not so require.

¶ 32. Accordingly, we conclude that Wis. Stat. ch. 980 does not require the dismissal of a pending commitment petition when the individual subject to that petition has been re-incarcerated due to a violation of parole or extended supervision.

### 2. Section 980.06 Does Not Require Immediate Execution of a Commitment Order Where Revocation Proceedings Are Pending

¶ 33. Even if the language of Wis. Stat. ch. 980 does not provide for the dismissal of a pending ch. 980

commitment petition when the individual subject to the petition has been re-incarcerated for a parole or extended supervision revocation, we must determine whether post-revocation prosecution of a ch. 980 petition conflicts with other provisions of ch. 980. We thus turn to § 980.06, the general provision that grants circuit courts the authority to commit sexually violent persons to the care and custody of the DHS. Section 980.06 states, in relevant part:

> If a court or jury determines that the person who is the subject of a petition under s. 980.02 is a sexually violent person, the court shall order the person to be committed to the custody of the department for control, care and treatment until such time as the person is no longer a sexually violent person.

¶ 34. The Petitioners focus on the language of this section that states a sexually violent person must be "committed to the custody of the department for control, care and treatment." *Id.* They argue that because this section requires "treatment" of sexually violent persons, and because the DOC does not provide such treatment, a sexually violent person cannot be simultaneously committed to DHS custody under Wis. Stat. ch. 980 and in the custody of the DOC. We disagree, because this interpretation adds to the language of § 980.06 and ignores other sections of ch. 980.

¶ 35. While we acknowledge that Wis. Stat. § 980.06 requires the circuit court to "order the person to be committed to the custody of the [DHS] for control, care and treatment," *see* § 980.06, ch. 980 does not specify when that commitment must commence. Stated a different way, while § 980.06 sets forth the requirements for a proper commitment order, neither that section nor any other section of ch. 980 contains lan-

guage stating when the individual requirements (control, care, and treatment) of that order must be satisfied. *See id.* Although the legislature did not direct the court regarding the timing or execution of commitment orders, we think it important to review the statutory history of ch. 980 to shed light on the current statute.

¶ 36. Wisconsin Stat. § 980.06 remains in much the same form as it was in 1993 when ch. 980 became law. *Compare* § 980.06 (2005–06) *with* 1993 Wis. Act 479, § 40. However, prior to 2005, the State could not file a ch. 980 commitment petition more than 90 days before an inmate's release date from DOC custody. § 980.02(ag) (2003–04) (stating that a petition could be filed if "[t]he person is within 90 days of discharge or release, on parole, extended supervision or otherwise, from a sentence that was imposed for a conviction for a sexually violent offense . . . .").

■

¶ 37. Before 2006, it was nearly impossible for a commitment order to be executed before the release of the individual from incarceration because the lengthy procedure required by Wis. Stat. ch. 980 could not be accomplished in the 90 days leading up to discharge or release. *See* Wis. Stat. §§ 980.02(ag), .04, .05 (2003–04) (outlining detention, probable cause procedures hearing, and expert examination procedures and establishing procedures for trial). However, in 2006, the legislature repealed § 980.02(ag) (2003–04) and replaced it with § 980.02(1m) (2005–06), which requires only that the ch. 980 commitment petition be filed "before the person is released or discharged."[14]

---

[14] The dissent contends that because Wis. Stat. § 980.015(2) states that the "the agency with jurisdiction shall inform each appropriate district attorney and the department of justice regarding the person as soon as possible beginning 90 days prior

*See* 2005 Wis. Act 434, §§ 82–83 (amending and updating § 980.02).[15]

¶ 38. By enacting Wis. Stat. § 980.02(1m), the legislature removed the pre-existing 90–day requirement, thereby extended the possible time for the filing of ch. 980 commitment petitions. Under a plain reading of § 980.02(1m), the State may file[16] a ch. 980 commitment petition at any time after the "person has been convicted of a sexually violent offense." § 980.02(2)(a)(1).[17]

to the applicable date" of release from a term of imprisonment, that a ch. 980 commitment petition may not be filed before that point. Dissent, ¶ 84–85. There is no language in the statute that supports this assertion. Instead, the statute simply states that "[a] petition filed under this section shall be filed before the person is released or discharged." § 980.02(1m).

[15] Act 434 amended a significant portion of ch. 980. *See generally* 2005 Wis. Act 434. *Compare* Wis. Stat. ch. 980 (2003–04) *with* Wis. Stat. ch. 980 (2005–06). We discuss only those portions relevant to the issues presented by these cases.

[16] Once a Wis. Stat. ch. 980 commitment petition has been filed, the statute requires the process to move forward by prescribing the duties which the circuit court must perform. *See* §§ 980.04(1) ("Upon the filing of a petition under s. 980.02, the court shall review the petition to determine whether to issue an order for detention of the person who is the subject of the petition."); 980.04(2)(b)1. ("[T]he court shall hold the probable cause hearing within 30 days . . . after the filing of the petition . . ."); 980.05(1) ("A trial to determine whether the person who is the subject of a petition under s. 980.02 is a sexually violent person shall commence no later than 90 days after the date of the probable cause hearing under s. 980.04 . . ."). This statutory framework requires the commitment process to move forward after the filing of the petition.

[17] The dissent argues that if the legislature had intended for its amendment to change the procedures for a ch. 980 commitment petition, "this significant change surely would have been highlighted in the portions of the legislative history

¶ 39. Because the State may now file a commitment petition at any time after the "person has been convicted of a sexually violent offense," Wis. Stat. § 980.02(1m), it is possible that a circuit court could enter a commitment order under § 980.06 well before the sexually violent person was released from DOC incarceration. Yet, as the Petitioners stress, § 980.06 seems to require commitment "to the custody of the department for control, care and treatment." This provision, the Petitioners argue, requires immediate commitment to the DHS following the entry of a commitment order. However, the Petitioners' view of the language of these two provisions would create an internal conflict within the statute: How could an individual be committed to the custody of the DHS for control, care and treatment while still incarcerated at a DOC facility? Under the Petitioner's view of the statute, the committed individual would have to be in two places at once. Such an interpretation would render a clearly absurd result; therefore, we must interpret the statute not as the Petitioners suggest, but in a way that harmonizes the provisions of the statute and gives effect to every word. *State v. Fischer,* 2010 WI 6, ¶ 24, 322 Wis. 2d 265, 778 N.W.2d 629.

---

that described the bill." Dissent, ¶ 96. In so doing, the dissent elevates the legislative history of the Act—or the lack thereof—to a position of greater importance than the actual language of the act. However, if the legislature had intended to merely codify the holding of *State v. Keith,* 216 Wis. 2d 61, 573 N.W.2d 888 (Ct. App. 1997), it could have codified the precise language of that holding, which it did not do. Therefore, we hold that we are bound by the enacted language of the statute, not the extensive legislative history as summarized by the dissent. *See Kalal,* 271 Wis. 2d 633, ¶ 44 ("Extrinsic evidence of legislative intent may become relevant to statutory interpretation in some circumstances, but is not the primary focus of inquiry. It is the enacted law, not the unenacted intent, that is binding on the public.").

¶ 40. To harmonize the statutes, we must first answer the question of whether Wis. Stat. ch. 980 allows for simultaneous ch. 980 commitment and DOC incarceration. We turn next to this question.

### 3. Section 980.07(6m) States that an Individual May Be Simultaneously Committed Under Chapter 980 And Incarcerated at a DOC Facility

¶ 41. To answer the question of whether a sexually violent person can be committed under Wis. Stat. ch. 980 and, at the same time, subject to DOC incarceration, we turn first to § 980.07(6m). It states that "[i]f a person committed under s. 980.06 is incarcerated at a county jail, state correctional institution, or federal correction institution for a new criminal charge or conviction or because his or her parole was revoked, any reporting requirement . . . does not apply during the incarceration period." § 980.07(6m).[18]

¶ 42. This provision 1) demonstrates that the legislature anticipated that simultaneous commitment and incarceration might occur and 2) clarifies that the legislature intended to allow it. In light of the legislature's recognition expressed in Wis. Stat. § 980.07(6m), the Petitioners argument that a sexually violent person cannot be simultaneously committed under ch. 980 and incarcerated in a DOC facility is contrary to the language of the statute. And, while the Petitioners were re-incarcerated before their commitments were finalized—meaning that § 980.07(6m) does

---

[18] Before 2006, ch. 980 was silent regarding simultaneous commitment and incarceration. *See generally* Wis. Stat. ch. 980 (2003–04). However, in 2005 Wis. Act 434, the legislature added the provisions above, which remains in the same form in the statutes today. *See* 2005 Wis. Act 434, § 110m.

not apply directly to the issue presented by this case—its language offers insight into how we should apply ch. 980 as a whole.

¶ 43. First, Wis. Stat. § 980.07(6m) states that sexually violent persons may be simultaneously in DOC custody while subject to a commitment order. While this provision, as the petitioners point out, appears to conflict with §§ 980.06 (the general commitment provision) and .065 (the general provision regarding placement at DHS facilities),[19] it is this court's duty to harmonize the statutes, not ignore one section, while enforcing another. *See Beard v. Lee Enters., Inc.*, 225 Wis. 2d 1, 15, 591 N.W.2d 156 (1999) ("Apparently conflicting provisions of law should be construed so as to harmonize them and thus give effect to the leading idea behind the law."); *Fontana v. Fontana-On-Geneva Lake*, 69 Wis. 2d 736, 742, 233 N.W.2d 349 (1975) ("In construing several sections of the statutes relating to a single subject it is the duty of the court to give force and effect to the different sections and not ignore any of them. . . . In interpreting these statutes we must, if it is possible to do so, harmonize and reconcile them.") (internal citations omitted).

¶ 44. Second, to harmonize Wis. Stat. §§ 980.06 (the general commitment provision), .065 (the general provision regarding placement at DHS facilities), and .07(6m) (the provision that allows for DOC custody following the revocation of parole), we must give effect to each provision. Accordingly, in light of § 980.07(6m),

---

[19] "The department shall place a person committed under s. 980.06 at the secure mental health facility established under s. 46.055, the Wisconsin resource center established under s. 46.056 or a secure mental health unit or facility provided by the department of corrections under sub. (2)." Wis. Stat. § 980.065.

we must reconcile the statute in a way that allows for the simultaneous commitment and incarceration at a DOC facility. To do so, we conclude that §§ 980.06 and .065 provide the general rule (commitment to a DHS facility to the custody of the DHS), and § 980.07(6m) provides an exception to that general rule (simultaneous commitment and incarceration) when the sexually violent person commits an offense which leads to either revocation or a new charge. Clearly, §§ 980.06 and .065 apply each time an individual is committed, because there is necessarily a commitment order and, as part of that order, placement at a DHS facility for that commitment. However, § 980.07(6m) applies to only those situations where parole has been revoked after the entry of a commitment order—necessarily a smaller number of cases.

¶ 45. Accordingly, we conclude that simultaneous incarceration at a DOC facility and commitment under Wis. Stat. ch. 980 is permissible. We have also concluded that the language of ch. 980 provides only two means for dismissal of a ch. 980 commitment petition, and neither is applicable in these cases. Additionally, we have concluded that ch. 980 does not set a time period for execution of a commitment order. In so doing, we have analyzed three separate sections of ch. 980 that, when viewed together and in light of the purpose of ch. 980, present a clear result. In the next section, we interpret ch. 980 as a whole, giving effect to each of its provisions, "harmoniz[ing] them and thus giv[ing] effect to the leading idea behind the law." *Beard,* 225 Wis. 2d at 15.

C. Harmonizing Chapter 980

¶ 46. It is our duty to interpret the statutes in a way that 1) preserves the purpose of the statute,

2) attains a reasonable result, and 3) gives reasonable effect to every word. *See Beard,* 225 Wis. 2d at 15; *Fischer,* 322 Wis. 2d 265, ¶ 24 ("When confronted with an apparent conflict between statutes, the court construes sections on the same subject matter to harmonize the provisions and to give each full force and effect. The court will not construe statutes so as to work unreasonable results.") (internal citations omitted); *Kalal,* 271 Wis. 2d 633, ¶ 44 ("Statutory language is read where possible to give reasonable effect to every word . . . .").

¶ 47. Based on our interpretation of Wis. Stat. ch. 980, we conclude that it does not require the dismissal of a pending commitment petition when the individual subject to the petition is re-incarcerated because of the revocation of parole or extended supervision. This result must follow for several reasons.

¶ 48. First, such a result is consistent with the purpose and language of Wis. Stat. ch. 980. Chapter 980 does not require dismissal, *see* ch. 980, and, although it does require commitment to the "custody of the department for control, care and treatment," it does not require an immediate execution of the commitment order where parole or extended supervision has been revoked, *see* § 980.06. Further, ch. 980 allows for simultaneous commitment and incarceration, *see* § 980.07(6m), and one of its overarching purposes is the protection of the public from sexually violent persons, *see West* 336 Wis. 2d 578, ¶ 27; *Post,* 197 Wis. 2d at 308; *Carpenter,* 197 Wis. 2d at 258.

¶ 49. With these principles in mind, we conclude that to harmonize Wis. Stat. ch. 980, we must hold that the State may pursue a ch. 980 commitment petition after the individual subject to the petition has been re-incarcerated due to a violation of parole or extended

107

supervision. This harmonization comports with the language of ch. 980, which does not require a dismissal, and reflects our prior holding that an order for commitment need not be executed immediately. Finally, our holding gives effect to the overall statutory scheme, designed to protect the public from sexually violent persons, because it allows the State to retain control of sexually violent persons rather than releasing them as a result of their own bad behavior.

¶ 50. Second, our holding not only harmonizes Wis. Stat. ch. 980, it also avoids an absurd result. *Hocking,* 326 Wis. 2d 155, ¶ 18 ("We attempt, whenever possible, to . . . avoid[] . . . absurd or unreasonable results." (citing *Kalal,* 271 Wis. 2d 633, ¶ 46)). Under the Petitioners' view of the statutes, a sexually violent person properly committed under ch. 980 and not subject to parole or extended supervision would be incentivized to commit non-sexual violent crimes while in DHS custody. The application of the Petitioners' argument would mean that the State would have only two choices following the commission of such a crime by a committed individual: 1) prosecute the individual for the crime, thereby ending the individual's commitment, or 2) forgo prosecution of the individual, thereby continuing the commitment, but allowing the individual to evade punishment.

¶ 51. If the State chooses the first option in this scenario, and is successful in convicting the individual of the crime, the State would be precluded from seeking re-commitment under Wis. Stat. ch. 980. For, if the individual committed a non-980 predicate offense (an offense not listed in § 980.01(6)), such as the offenses that were committed here, the language of § 980.02(1m-2) prevents the State from petitioning for re-commitment under ch. 980. This section requires, inter alia, that the State prove that the person "has been convicted of a sexually violent offense," § 980.02(2)(a)1.,

and that the ch. 980 petition must be "filed before the person is released or discharged" from the sentence for that sexually violent offense, § 980.02(1m).

¶ 52. As the court of appeals made clear in *State v. Treadway,* this provision means that the State may file a Wis. Stat. ch. 980 commitment petition at the conclusion of either consecutive or concurrent sentences where one or more of the sentences served is a ch. 980 predicate offense. *See* 2002 WI App 195, ¶ 17, 257 Wis. 2d 467; 651 N.W.2d 334; *see also State v. Keith,* 216 Wis. 2d 61, 72, 573 N.W.2d 888 (Ct. App. 1997). The new sentence would be neither consecutive nor concurrent with a sentence for a sexually violent offense; therefore, the sexually violent person could not be recommitted at the conclusion of the new sentence for the non-sexually violent crime. *See* § 980.02(1m) (requiring the filing of the ch. 980 commitment petition before the person is released); *see also Treadway,* 257 Wis. 2d 467, ¶ 17; *Keith,* 216 Wis. 2d at 72. Accordingly, if the Petitioners are correct, and a sexually violent person cannot be simultaneously committed under ch. 980 and incarcerated at a DOC facility, then a committed sexually violent person could permanently end a valid commitment by engaging in criminal behavior.

¶ 53. This is an absurd result. The legislature could not have intended, when it enacted Wis. Stat. ch. 980, that a committed sexually violent person could, by engaging in criminal behavior, terminate his own commitment. This, however, is the result that would follow if we were to accept the Petitioners' argument.[20]

---

[20] The Petitioners' interpretation of the statute is further weakened by the fact that it leads to opposite outcomes based solely on happenstance. If, as the Petitioners suggest, a Wis. Stat. ch. 980 commitment petition must be dismissed if a parole or extended supervision revocation occurs *before* commitment,

¶ 54. By harmonizing the provisions contained in Wis. Stat. §§ 980.02(1m), .06, .065, and 07(6m), we avoid this absurd result, and interpret the statute in a tenable way. Accordingly, we conclude that ch. 980 does not require the dismissal of a pending commitment petition when the individual subject to the petition is re-incarcerated because of the revocation of parole or extended supervision.

### D. Our Interpretation of Chapter 980 Does Not Render the Statute Constitutionally Infirm

¶ 55. The Petitioners argue, albeit in slightly different manners, that the interpretation of Wis. Stat. ch. 980 adopted above deprives them of constitutional protections.[21] We observe, like the court of appeals, that these arguments are 1) poorly developed, and 2) dependent upon flawed statutory interpretation. Therefore, although we need not address the constitutionality of a statute where a constitutional challenge has not been

---

but not *after* a commitment order is issued, then whether a sexually violent person may be committed or must have his petition dismissed is completely dependent on when he commits the offense. Therefore, the Petitioners' argument reduces as follows: If the sexually violent person's parole or extended supervision is revoked pre-commitment, even if the revocation is only days—or even hours—before the order is entered, the pending ch. 980 commitment petition must be dismissed. If, however, his parole or extended supervision is revoked post-commitment, § 980.07(6m) applies, and he may be transferred to a DOC facility while still subject to a ch. 980 commitment.

[21] Gilbert argues that simultaneous commitment and incarceration violates his substantive due process, double jeopardy, and ex post facto constitutional protections. Hunt, alternatively, implies that simultaneous commitment and incarceration violates due process.

fully developed or briefed, *see State v. Johnson,* 2009 WI 57, ¶ 71, 318 Wis. 2d 21, 767 N.W.2d 207; *see also Lake Beulah Mgmt. Dist. v. State Dep't of Natural Res.,* 2011 WI 54, ¶ 29 n.26, 335 Wis. 2d 47, 799 N.W.2d 73; *State v. Franklin,* 2004 WI 38, n.5, 270 Wis. 2d 271, 677 N.W.2d 276, we will comment briefly on the Petitioners' arguments for the sake of clarity.

¶ 56. The Petitioners correctly assert that this court must interpret Wis. Stat. ch. 980 to avoid constitutional infirmities. *See State v. Stenklyft,* 2005 WI 71, ¶ 8, 281 Wis. 2d 484, 697 N.W.2d 769 (holding that courts should interpret statutes as constitutional whenever possible); *State ex rel. Friedrich v. Dane Cnty. Cir. Ct.,* 192 Wis. 2d 1, 24, 531 N.W.2d 32 (1995) (stating that this court must "indulge every presumption in order to preserve the constitutionality of a legislative enactment"). The Petitioners go on to conclude, however, that an interpretation that allows both simultaneous commitment and incarceration would do the exact opposite: instead of avoiding constitutional infirmities, it would create them. We disagree with each of the Petitioners' conclusion for the following reasons.

¶ 57. The Petitioners argue that, in accordance with *Foucha v. Louisiana,* a committed individual "may be held as long as he is both mentally ill and dangerous, but no longer." 504 U.S. 71, 77 (1992). This, the Petitioners assert, precludes simultaneous incarceration and commitment of a sexually violent person. Although, as the court of appeals noted, their argument is undeveloped for the complexity of the challenge they assert, the Petitioners argue that because a simultaneously incarcerated and committed sexually violent person's mental condition could not be assessed at the time of commitment, *Foucha* precludes commitment.

111

¶ 58. This argument fails because nothing in our decision today precludes—or even suggests—that the State may forgo the statutory commitment procedures set forth in Wis. Stat. ch. 980. Those procedures adequately ensure that at the issuance of a commitment order, the court has determined that the committed individual is—at that moment—a sexually violent person. Further, if the individual serves his sentence of incarceration and is transferred to DHS custody, he will then be subject to periodic reevaluation to determine whether he remains a sexually violent person. *See* § 980.07. Because our opinion does not remove any of these procedural protections, sexually violent persons continue to be "held as long as [they are] both mentally ill and dangerous, but no longer." *Foucha,* 504 U.S. at 77. Therefore, the Petitioners' argument that *Foucha* precludes commitment is misplaced.

¶ 59. Next, the Petitioners argue that "allow[ing] civil commitment to prison would . . . render[] Chapter 980 punitive," in violation of the constitutional protection against double jeopardy. It must first be noted, of course, that the statute does not permit, nor does our opinion contemplate, "commitment to prison." The Petitioners were not "committed to prison"; instead, they were re-incarcerated for parole and extended supervision violations.

██ ██

¶ 60. Further, it is the language of the statute which determines whether a statute is punitive for constitutional purposes. *See Seling v. Young,* 531 U.S. 250, 261 (2001) ("[T]he question whether an Act is civil or punitive in nature is . . . one of statutory construction."); *Kansas v. Hendricks,* 521 U.S. 346, 361 (1997). Therefore, because we have repeatedly determined,

after lengthy analysis, that Wis. Stat. ch. 980 is not a punitive statute, *Carpenter,* 197 Wis. 2d at 258–59, *State v. Burris,* 2004 WI 91, ¶ 36, 273 Wis. 2d 294, 682 N.W.2d 812; *State v. Rachel,* 2002 WI 81, ¶ 18, 254 Wis. 2d 215, 647 N.W.2d 762; *State v. Hezzie R.,* 219 Wis. 2d 848, 879, 580 N.W.2d 660 (1998), we once again adopt our prior reasoning and re-affirm our prior holdings that ch. 980 is not a punitive statute.[22]

¶ 61. Accordingly, we conclude that because Wis. Stat. ch. 980 is not a punitive statute and our decision upholds the procedural requirements of ch. 980, our interpretation does not render the statute constitutionally infirm.

## V. CONCLUSION

¶ 62. We are asked to decide whether Wisconsin Statutes chapter 980 requires the dismissal of a pending commitment petition when the individual subject to the petition is re-incarcerated because of the revocation of parole or extended supervision. We hold that the State may proceed with a ch. 980 commitment after the revocation of a subject individual's parole or extended supervision. Based on that holding, we conclude that both of the ch. 980 commitments at issue in this case are valid, and therefore affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

---

[22] The Petitioners also submit that an interpretation of Wis. Stat. ch. 980 that permits simultaneous incarceration and commitment violates constitutional protections against ex post facto laws. However, although the Petitioners make this assertion, their argument to that effect is underdeveloped, amounting to a single briefed paragraph. Therefore, we decline to address it. *State v. Johnson,* 2009 WI 57, ¶ 71, 318 Wis. 2d 21, 767 N.W.2d 207.

¶ 63. ANN WALSH BRADLEY, J. (*dissenting*). Chapter 980 is an involuntary commitment statute. It permits the State to confine a person indefinitely not as punishment for what that person has done, but rather based on the person's mental state and what that person might do in the future.

¶ 64. Since its inception, Chapter 980 has survived multiple constitutional challenges because commitment under that chapter rests on an assessment of the person's current mental state. A person can be committed under Chapter 980 if there is a showing that the person is dangerous because of a mental disorder that makes it likely that the person will engage in future acts of sexual violence.

¶ 65. The majority undermines this bedrock principle of Chapter 980. It appears to hold that there need not be any finding that a person is mentally ill or dangerous at the time the person is actually committed to an institution for treatment. Instead, it permits an involuntary commitment to act like a detainer that can be executed "at any time" after the findings of mental illness and dangerousness are made. Under the majority's analysis, these findings could have been made months or even years before the person is actually committed to the custody of the Department of Health Services (DHS) for treatment.

¶ 66. Because the majority's interpretation cannot be squared with the constitution, the statute, or the legislative history, I respectfully dissent.

I

¶ 67. Allowing an involuntary commitment order to be entered "at any time" unconstitutionally divorces the findings of mental illness and dangerousness from

114

the time the commitment is actually "executed." I have previously observed that repeated legislative amendments which made the statute increasingly punitive threatened the constitutionality of involuntary commitments under Chapter 980. *State v. Rachel,* 2002 WI 81, 254 Wis. 2d 215, 647 N.W.2d 762 (Bradley, J., concurring). Here, it is not the legislature but rather, it is the majority opinion of this court that further compromises the constitutionality of the statute.

¶ 68. The majority determines that the commitment orders in this case are valid based upon its conclusion that a circuit court is permitted to "enter a commitment order . . . well before the sexually violent person [is] released from DOC [Department of Corrections] incarceration." Majority op., ¶ 39.

¶ 69. To reach this conclusion, the majority asserts that the language of the commitment statute "does not set a time period for execution of a commitment order," *id.,* ¶ 28, and does not explicitly state "when [a] commitment must commence," *id.,* ¶ 35. Because the legislature removed a provision of the statute requiring the State to allege in the petition that the person is within 90 days of discharge or release from DOC custody, *id.,* ¶ 36, the majority concludes that the legislature intended to permit the State to file a petition "at any time after the person has been convicted of a sexually violent offense," *id.,* ¶ 38.

¶ 70. Tagged on to the end of the opinion, after already arriving at the holding in this case, the majority states: "We will comment briefly on the Petitioners' [constitutional] arguments for the sake of clarity." *Id.,* ¶ 55. It appears to conclude that there is no constitutional infirmity here because Chapter 980, in its various iterations, has withstood constitutional challenges in the past. *Id.,* ¶ 60.

¶ 71. Ultimately, the majority reemploys its statutory analysis in lieu of any constitutional analysis. It relies on the fact that the person is mentally ill and dangerous at the time the commitment order is entered in an attempt to salvage its constitutionality—even if the order is not actually executed (meaning the person is not actually committed to DHS custody) until years or even decades later. *Id.,* ¶ 58.

## II

¶ 72. The majority's interpretation authorizes an unconstitutional result. If the majority were correct that the statute allowed a commitment order to be entered "at any time after the person has been convicted of a sexually violent offense," this conclusion would singlehandedly undermine the constitutionality of Chapter 980. Just last year, we acknowledged that Chapter 980 "required the State to prove the individual's mental disorder and dangerousness . . . *at the time of commitment." State v. West,* 2011 WI 83, ¶ 95, 336 Wis. 2d 578, 800 N.W.2d 929 (emphasis added). This requirement is necessary to avoid violations of due process, ex post facto, and double jeopardy.

¶ 73. Substantive due process requires that an involuntary commitment is based on a person's current mental illness and dangerousness. *Foucha v. Louisiana,* 504 U.S. 71 (1992); *State v. Post,* 197 Wis. 2d 279, 294, 541 N.W.2d 115 (1995). In *Foucha,* the United States Supreme Court explained that a person could be involuntarily committed "as long as he is both mentally ill and dangerous, but no longer." 504 U.S. at 77. It held: "[K]eeping Foucha against his will in a mental institution is improper absent a determination in civil commitment proceedings of *current mental illness and dangerousness." Id.* at 78 (emphasis added).

116

¶ 74. Similarly, to resolve a substantive due process challenge in *Post,* we relied on the fact that "Chapter 980 authorizes the civil commitment of persons, previously convicted of a sexually violent offense, who currently suffer from a mental disorder that predisposes them to repeat such acts." 197 Wis. 2d at 294. "[T]he focal point of commitment is not on past acts but on *current diagnosis of a present disorder,*" which is "conceptualized as a clinically significant behavioral or psychological syndrome or pattern that . . . must reflect a current state of distress." *Id.* at 307, 306. (emphasis added).

¶ 75. Additionally, both the United States Supreme Court and this court have explained that the focus on the person's current mental state may be necessary to protect an involuntary commitment statute from violating the constitutional prohibition against ex post facto laws. In *Kansas v. Hendricks,* the Court held that a commitment scheme similar to Chapter 980 does not raise ex post facto concerns because it "permits involuntary confinement based upon a determination that the person *currently* both suffers from a 'mental abnormality' or 'personality disorder' and is likely to pose a future danger to the public." 521 U.S. 346, 371 (1997) (emphasis in original).

¶ 76. Likewise, in *State v. Carpenter,* 197 Wis. 2d 252, 274, 541 N.W.2d 105 (1995), this court explained that Chapter 980 survived an ex post facto challenge because "[t]he legislative aim is not punishment but regulation of a present situation." The *Carpenter* court's determination relied on Chapter 980's focus on "the offender's current mental condition and the present danger to the public, not punishment." *Id.*

¶ 77. For similar reasons, both the *Hendricks* Court and the *Carpenter* court have explained that the

117

focus on a person's mental state protects an involuntary commitment statute from violating the constitutional prohibition against double jeopardy. *See Hendricks,* 521 U.S. at 363 ("[T]he confinement's duration is . . . linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others."); *Carpenter,* 197 Wis. 2d at 268 ("[T]he person is entitled to discharge as soon as his or her dangerousness or mental disorder abates."). The crux of this analysis is that an involuntary commitment does not constitute a second punishment for a past offense because it is based on the current condition of the committed person.

¶ 78. The teachings of these cases are clear. To avoid multiple constitutional infirmities, there must be a finding that the person suffers from a mental disorder and that he is dangerous at the time he is committed. These determinations cannot be made months or years in advance of the execution of a commitment.

¶ 79. The majority appears to interpret the statutory text in a manner that purposefully overlooks this bedrock principle. It concludes that an involuntary commitment order can be entered "at any time after the person has been convicted of a sexually violent offense" and then "executed" at a later date. Majority op., ¶¶ 38, 45.

III

¶ 80. In addition to being contrary to constitutional principles, the majority's interpretation is difficult to square with the language and expressed legislative intent underlying Chapter 980. In concluding that a circuit court is permitted to enter a commitment order "well before the sexually violent person [is] re-

118

leased from DOC incarceration," the majority relies on two premises: (A) the fact that the statute does not explicitly provide when a commitment must be executed; and (B) the inferences it derives from 2005 amendments to Chapter 980. When carefully examined, both fall apart.

¶ 81. The first premise falls apart because the majority interprets the statutory provisions in isolation while ignoring the context set forth in surrounding provisions. This approach violates a basic canon of statutory construction. *State ex. rel Kalal v. Circuit Court for Dane County,* 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Context is important to meaning. . . . Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes . . . .").

¶ 82. The second premise falls apart because the majority makes inferences about legislative intent without even examining the legislative history.[1] Had the majority chosen to examine, rather than to guess and infer, it would have discovered that the relevant 2005 amendments to Chapter 980 were meant to clarify and codify *State v. Keith,* 216 Wis. 2d 61, 573 N.W.2d 888 (Ct. App. 1997)—not to permit a commitment order to be entered "at any time."

---

[1] The majority takes issue with my consultation of legislative history. It asserts that my analysis "is representative of the precise evil that *Kalal* was designed to combat." Majority op., ¶ 28 n.11. In *Kalal,* however, the court recognized that "[e]xtrinsic evidence of legislative intent may become relevant to statutory interpretation in some circumstances," and that one of those circumstances is when statutory language is ambiguous. 271 Wis. 2d 633, ¶¶ 44, 50–51. Another circumstance may be to avoid an unconstitutional interpretation. *See id.,* ¶ 63 n.11 (Abrahamson, C.J., concurring). Both circumstances are present here.

A

¶ 83. Contrary to the majority's assertions, the language of Chapter 980, when examined in context, contemplates that a person will not remain in DOC custody once a petition for involuntary commitment has been filed. Instead, the person will be transferred to the custody of the DHS. An examination of three separate provisions of Chapter 980 provides this necessary context.

¶ 84. First, the State's decision to file a petition is generally triggered when the DOC sends notice that a person is within 90 days of release or discharge. Wisconsin Stat. § 980.015(2) provides:

> If an agency with jurisdiction has control or custody over a person who may meet the criteria for commitment as a sexually violent person, the agency with jurisdiction shall inform each appropriate district attorney and the department of justice regarding the person *as soon as possible beginning 90 days prior to the applicable date of . . . the anticipated discharge or release . . . from a sentence of imprisonment or term of confinement in prison* that was imposed for a conviction for a sexually violent offense, from a continuous term of incarceration, any part of which was imposed for a sexually violent offense . . . .

(Emphasis added.)

¶ 85. Second, the plain language of Wis. Stat. § 980.04 states that upon the filing of a petition, an incarcerated person will not be subjected to continued incarceration. Instead, the statute provides that upon the filing of a petition, "[i]f the person is serving a sentence of imprisonment, . . . the court shall order that the person be transferred to a detention facility approved by" the DHS. Wis. Stat. § 980.04(1).

120

¶ 86. Third, once a commitment trial has been held and the person has been determined to be sexually violent, "the court shall order the person to be committed to the custody of the [DHS] for control, care and treatment until such time as the person is no longer a sexually violent person." Wis. Stat. § 980.06. The court's order "shall specify that the person be placed in institutional care." *Id.*

¶ 87. The term "shall" is presumed to be mandatory when it appears in a statute. *State v. Kywanda F.,* 200 Wis. 2d 26, 33, 546 N.W.2d 440 (1996). Nevertheless, the majority appears to conclude that this statutory mandate is ambiguous. Although the statute provides that the court shall order the person be committed to the custody of the DHS, the majority seizes on the fact that the language of the statute "does not set a time period for execution of a commitment order," majority op., ¶ 28, and does not explicitly state "when [a] commitment must commence," *id.,* ¶ 35.

¶ 88. It is true that Wis. Stat. § 980.06 does not explicitly say that the court shall order the person to be "immediately" committed to the custody of the DHS. It is also true that the statute does not say that the court shall order the person to be committed to the custody of the DHS within a certain number of days of the entry of a commitment order.

¶ 89. Nevertheless, the language of the statute is to be read in context—in light of the surrounding sections of Chapter 980, set forth above. It also must be read in light of court decisions about the constitutionality of involuntary commitments generally and Chapter 980 in particular.[2]

---

[2] As set forth above, the constitution requires that the State must carry its burden of proving that the person is both

121

¶ 90. When read in this light, any ambiguity about when a commitment must commence fades away. A commitment must commence *once the person has been committed as a sexually violent person.* To allow a commitment to act as a detainer to be executed at some later date compromises the bedrock principle of a Chapter 980 commitment—that it is based on the current condition of the person who is committed.

B

¶ 91. To bolster its unconstitutional conclusion that the State may file a petition for commitment "at any time after the person has been convicted of a sexually violent offense," the majority compares the previous version of the statute with the version that exists today. It draws inferences about the legislature's intent by isolating two discrete amendments ushered in by 2005 Wis. Act 434 without examining its accompanying legislative history.

¶ 92. The majority points to former Wis. Stat. § 980.02(2)(ag) (2003–04), which provided that a petition for commitment must allege that "[t]he person is within 90 days of discharge or release . . . from a sentence that was imposed for a conviction for a sexually violent offense." When the statute was amended in 2005, the legislature repealed that subsection and created subsection 980.02(1m), which reads: "A petition filed under this section shall be filed before the person is released or discharged." 2005 Wis. Act 434, §§ 82, 83.

mentally ill and dangerous. *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992). This constitutional requirement is codified in Wis. Stat. § 980.01(7), which defines a "sexually violent person," in part, as a person "who is dangerous because he or she suffers from a mental disorder that makes it likely that the person will engage in one or more acts of sexual violence."

¶ 93. The phrase "[b]efore the person is released or discharged" could be interpreted differently by reasonably well-informed persons. It could be interpreted to mean *at any time* before the person is released or discharged, as the majority asserts. Or, when read in context with the surrounding statutes, it could be interpreted to mean *shortly* before the person is released or discharged. *See infra.,* ¶ 83.

¶ 94. The majority does not acknowledge this ambiguity, and it sees no need to examine the relevant legislative history. Instead, it leaps to the conclusion that the legislature plainly intended to "extend[] the possible time for the filing of ch. 980 commitment petitions" so that "a circuit court could enter a commitment order under § 980.06 well before the sexually violent person was released from DOC incarceration." Majority op., ¶¶ 38, 39.

¶ 95. The majority's conclusion would represent a dramatic departure from the prior version of the statute, in which the petition could not be filed until the person was within 90 days of release. It would also be a dramatic departure from how Chapter 980 had previously been described in decisions of Wisconsin courts. *See, e.g., Keith,* 216 Wis. 2d 61. When I review the relevant legislative history, I see no indication that the 2005 amendments intended to usher in such a change.

¶ 96. If the bill was intended to change Chapter 980 as dramatically as the majority asserts, this significant change surely would have been highlighted in the portions of the legislative history that described the bill. It is not.

¶ 97. If the majority's interpretation is correct, then the significant change ushered forth by the 2005 amendment entirely evaded the attention of the Legislative Council staff members who were in charge of

drafting the bill and the Joint Legislative Council that recommended the measures to the legislature. None of the numerous documents drafted by the Legislative Council or the Joint Legislative Council to explain the "key provisions" of the bill mentions that it changes the law to allow a person to be committed "at any time after the person has been convicted of a sexually violent offense."[3] *See,* e.g., Wisconsin Legislative Council Re-

---

[3] The portion of the Joint Legislative Council's Report to the Legislature which discusses the amendments to Wis. Stat. § 980.02, the section of Chapter 980 which addresses commitment petitions, provides:

**Commencement of Commitment Proceedings**

Under **current law**, if an agency with jurisdiction (i.e., the agency with the authority or duty to release or discharge the person) has control or custody over a person who may meet the criteria for commitment as an SVP, the agency must inform each appropriate district attorney (DA) and DOJ regarding the person as soon as possible beginning three months prior to the applicable date of the following: (1) the anticipated discharge from a sentence, anticipated release on parole or extended supervision, or anticipated release from imprisonment of a person who has been convicted of an SVO; (2) the anticipated release from a secure juvenile facility of a person adjudicated delinquent on the basis of an SVO; or (3) the termination or discharge of a person who has been found not guilty of an SVO by reason of mental disease or defect.

Under the **bill**, for persons under a sentence, the agency must inform the DA and DOJ regarding the person as soon as possible beginning 90 days before the date of the anticipated discharge or release on parole or extended supervision, or otherwise, from a sentence of imprisonment or term of confinement in person that was imposed for a conviction for an SVO, from a continuous term of incarceration, any part of which was imposed for an SVO, or from a prison placement under the intensive sanctions program, any part of which was imposed for an SVO. . . . The DA and DOJ must also be notified of the anticipated release on parole or discharge of a person committed under ch. 975, Stats. (the sex crimes chapter in effect prior to the creation of ch. 980), for an SVO.

port to the Legislature, Special Committee on Sexually Violent Persons Commitment (Sept. 9, 2005), available at http://legis.wisconsin.gov/lc/committees/study/2004/SVPC/files/RL_05_08_svpc.pdf; Memorandum from Ronald Sklansky, Senior Staff Attorney at the Wisconsin Legislative Council, to Members of the Special Committee on Sexually Violent Person Commitments (Sept. 13, 2004), available at http://legis.wisconsin.gov/lc/committees/study/2004/SVPC/index.htm.

¶ 98. The reason for removing Wis. Stat. § 980.02(2)(ag) (2003–04) and creating sub. (1m) is revealed by examining this legislative history. Both changes were part of a larger package of amendments that were enacted to remove the ambiguity in former Wis. Stat. § 980.02(2)(ag) that had been identified by the court of appeals in *State v. Keith,* 216 Wis. 2d 61.

¶ 99. In *Keith,* the defendant served consecutive sentences for first-degree sexual assault, second-degree sexual assault, and fourth-degree sexual assault. On the day before he was scheduled to be released, the State filed a Chapter 980 petition for his commitment as a sexually violent person.

¶ 100. Keith asserted that the court lacked jurisdiction to commit him. In support of this argument, he relied on Wis. Stat. § 980.02(2)(ag), which provided that

---

**Filing a Commitment Petition**

Under **current law,** DOJ may file a petition to commit a person as an SVP at the request of the agency with the authority or duty to release or discharge the person. If DOJ does not file a petition, the DA for the county in which the person was convicted, adjudicated delinquent, or found not guilty by reason of insanity or mental disease, defect, or illness, or the county in which the person will reside, may file the petition. The **bill** specifies that the DA of the county in which the person is in custody may also file the petition; a juvenile court does not have jurisdiction over a petition involving a child; and filing fees are eliminated.

a petition must allege that the person was "within 90 days of discharge or release . . . from a sentence that was imposed for a conviction for a sexually violent offense." Because Keith was serving only a sentence for fourth-degree sexual assault at the time of his release, and because that offense does not qualify as a sexually violent offense, Keith argued that the petition must be dismissed.

¶ 101. The court of appeals disagreed. It concluded that the language of sub. (2)(ag) was ambiguous because it failed to address how consecutive sentences should be treated. *Id.* at 70. Ultimately, it concluded that the petition was timely because Keith's three consecutive sentences should be treated as one continuous sentence for purposes of determining whether the petition had been timely filed under sub. (2)(ag). It stated: "[T]here is absolutely no indication that the legislature intended to predicate ch. 980 proceedings on whether a sexually violent offense was the last sentence ordered in a string of consecutive sentences." *Id.* at 72.

¶ 102. The legislative history indicates that the legislature's intent in removing sub. (2)(ag) was to remove the ambiguity identified in *Keith*—not to permit a petition to be filed "well before the sexually violent person [is] released from DOC incarceration." At the same time the legislature removed sub. (2)(ag), it amended the notice statute, Wis. Stat. § 980.015(2)(a), to codify the precise language from *Keith* and ensure that notice would be sent within 90 days of discharge or release "from a continuous term of incarceration, any part of which was imposed for a sexually violent offense." See 2005 Wis. Act 434, § 75; *Keith,* 216 Wis. 2d at 71.

¶ 103. That the legislature removed sub. (2)(ag) for the purpose of omitting the ambiguity identified in

*Keith* is supported by the documents produced by the Legislative Council and by the testimony considered by the Special Committee on Sexually Violent Persons Commitment. As a memo written by the Legislative Liaison to the Public Defender's Office explains, the amendment to the procedure for commencing a petition "codifies *State v. Keith* and clarifies the law." Memorandum by Krista Ginger, Wisconsin State Public Defender Legislative Liaison, to Members of the Special Committee on Sexually Violent Person Commitments at 2 (Jan. 31, 2005).

## IV

¶ 104. As described above, the majority's conclusion is not motivated by constitutional requirements, the language of the statute, or the relevant legislative history. Rather, the majority's conclusion appears to be motivated by a policy concern.

¶ 105. Instead of constitutional analysis, it substitutes emotional appeal. The majority posits that its interpretation is necessary to prevent sexually dangerous persons from evading commitment and being released into the community. It asserts that "release from custody of an individual still considered dangerous" is incompatible with the goal of protecting the public, majority op., ¶ 31, and that its conclusion is necessary to "allow[] the State to retain control of sexually violent persons rather than releasing them as a result of their own bad behavior," *id.,* ¶ 49.

¶ 106. No one wants sexually violent people who are dangerous to be released into the streets. Likewise, no one wants sexually violent people to avoid being held accountable for their bad behavior. Yet, no one should allow this court to ignore its obligation to examine and

apply the constitutional requirements. The majority's failure to do so here compromises the constitutionality of Chapter 980.

¶ 107. Accordingly, I respectfully dissent.

¶ 108. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.